TALIAFERRO, Judge.
The plaintiffs, Jake Neal and his. wife, Zelma Neal, sued the defendants, C. V. Deax, Charlie Chevalier and United States Fidelity & Guaranty Company of Baltimore, Maryland, to recover a large amount in damages on account of the death of their only child, Adele Neal, allegedly •caused by the negligence, of Chevalier in the operation of a truck and trailer belonging to Deax, said company being his insurer.
The accident alleged upon occurred about one o’clock A.M., Sunday, May 8, 1949, on United States Highway No. 71, the surface. of which is a slab of concrete eighteen feet (18') wide, approximately one and one-half (IV2) miles north of the Village of Clarence in Natchitoches Parish. The highway from Clarence to and for some miles north of the locale of the accident, is a tangent.
At the time of the accident there existed no weather conditions on or about said tangent that interfered with the free exercise of the sense of sight. The surface of the concrete, save for dew, was dry.
In the afternoon of May 7th, Chevalier left Forest Hill in Rapides Parish with said vehicles, heavily laden with large green timbers, destined for delivery to Pecos, in the State of Texas. He was routed through Shreveport, Louisiana, over said highway No. 71. At about the hour of 6:30 the inside right rear tire of the trailer blew out. The truck was veered to its right upon the wide dirt shoulder at a slight angle, and when the right rear wheel of the trailer left the pavement it sank into the wet dirt, adjacent to the concrete, so deep that the axle rested thereon. The forward movement of the truck was instantly arrested. The other right wheel of both vehicles was also off of the concrete. It was then daylight. Chevalier at once removed the damaged tire and mounted a new one. A passing truck stopped and endeavored to pull the vehicles upon the highway but failed. In the effort to do this, the rear axle of the trailer was broken.
Chevalier then returned to Clarence and ’phoned to his employer, seventy-five (75) miles distant, and asked that needed assistance be sent to him. This reached the locus about 11:45 o’clock. A new axle was installed, but the truck sent could not-disengage the trailer from its bogged-down condition. While the situation was as above related, Mrs. Neal and her daughter, in their Chevrolet passenger car, being driven by the former, approached from the south at a very rapid speed, and without slowing down, violently collided with the ends of the timbers, extending beyond the truck bed forty-six inches (46"), and the daughter was instantly killed from the impact. Mrs. Neal suffered some physical injuries, painful, but not really serious.
The elements of negligence charged to Chevalier and relied upon for recovery, are three, viz:
1. Not removing the disabled truck and trailer entirely from the concrete portion of the highway;
2. Not placing flares at both1 ends of the truck to warn motorists of its presence;
3. The act of Chevalier “in jumping out in front of petitioners’ car and waving •a flashlight in such manner as to confuse the driver thereof.”
Defendants excepted to the original and supplemental petitions as disclosing neither a cause nor a right of action. The exceptions were overruled. We assume, since the exceptions are not urged here, that they have been abandoned. We shall so consider them.
The defendants deny that to any extent was Chevalier negligent in leaving the truck and trailer where they were when the collision occurred. They aver that every reasonable effort was made by Chevalier and other employees of Deax to pull the truck back upon the highway immediately prior to the accident. They further aver that the collision was solely caused by Mrs. Neal driving her car in the center of the highway, at a speed of near eighty (80) miles per hour “without keeping a proper lookout and without having the car under control and while in an intoxicated ' condition.”
Further pleading, defendants aver that Chevalier, immediately after realizing that *854 the truck and trailer could not be moved with the means at hand, as required by law, placed flares on the road one hundred feet ■ (100') above and below the stalled vehicles, and one at their left side, near the center of the concrete; that in addition to-this, the headlights were left burning; and, further, that Chevalier rigged up a light at the rear of the truck and near the top of the lumber; that, because of all of these lights, the vehicles were well illumined on all sides and notice of their location thereby clearly given, to say nothing of the flares. They additionally deny that Chevalier jumped out into the road beside the trailer, as alleged by the plaintiffs, but do allege that he was standing on the concrete slab at the rear of the trailer waving a flashlight in an effort to warn all northbound traffic that danger was ahead, but Mrs. Neal paid no attention thereto, not even retarding her speed; that many motor vehicles going each way, saw the lights and flares and passed without mishap.
Under appropriate allegations, in keeping with the summarized pleadings, defendants, in the alternative, urge in bar of plaintiffs’ demand, contributory negligence of both Mrs. Neal and her daughter. In addition, the demand is resisted on the ground that the Chevrolet car was being driven at a rate of speed so rapid that it could not have been stopped within the distance illumined by its headlights.
Plaintiffs’ demands were rejected and they appealed.
The record clearly exonerates the driver, Chevalier, from negligence of any character as a cause or contributing cause of this unfortunate tragedy.
It is almost inconceivable that he could have employed means, additional to those he did employ, to warn traffic of the presence of the stalled vehicles. While there is some testimony to- the contrary, the overwhelming preponderance of the testimony proves beyond question that he placed flares on the highway, below, above and beside the vehicles, as required by law. A photograph taken of the vehicles immediately following the accident, reveals the presence of the flare that was placed beside the truck. These flares were observed ■by other motorists when many hundred feet from them and prior to passing the vehicles.
It is equally well established that the head, side, clearance and rear lights, described in the answer, were burning prior to the accident, at the time thereof, and on until daylight. Conclusive of these facts, is the testimony of Trooper C. C. Wilson. He was at Clarence when Chevalier ’phoned to Deax for assistance. He was informed by Chevalier of the location of the stalled truck and trailer, who also told him that the flares had been properly placed on the road and all lights were on. The Trooper soon thereafter drove by the vehicles and found conditions about them to be as related by Chevalier. He returned about an hour later and said conditions had undergone no change. He was advised of the accident immediately after it occurred and promptly drove to the scene. Again he found the flares functioning and all the lights on truck and trailer burning as before, save one that had been attached to the south end of the lumber. It was. destroyed in the collision.
Chevalier’s acts of precaution in the respects mentioned clearly complied with paragraph (c) of Rule 15 of the Highway-Regulatory Act, #286 of 1938. Now paragraph 241, Title 32, Volume 3, LSA-RST. of 1950, and paragraph 1 of Act 164 of 1936, as amended by Act 215 of 1942, now-paragraph 441 of Title 32, Vol. 3 of said. Revised Statutes.
It has been many times held that-by leaving a broken down or disabled' vehicle on the highway, for a reasonable-time, a motorist is not guilty of actionable-negligence. See: Sexton v. Stiles, 15 La. App. 148, 130 So. 821; Duet v. Tramontana et al., La.App., 26 So.2d 324; Beach v. Union Brewing Corporation et al., La.App., 187 So. 332; Parlongue v. Leon, 6 La.App. 18; 60 Corpus Juris, par. 332; Bobbitt’s Motor Vehicle Law P. 496, Sec. 679:. And, especially is this true when the motorist has exercised the precautionary measures for the protection and safety of the-public as was done in this case.
*855 Chevalier testified that he did try to wave down the Neal car by means of a flashlight, after he observed that it was approaching at a rapid speed, and, apparently, without effort at speed reduction. He says he was standing on the pavement near the right rear corner of the trailer and escaped being killed by the Neal car only by jumping to safety. We are unable to see how his action in this respect could have confused Mrs. Neal. It would appear that she was driving heedlessly and recklessly with the sole purpose in mind to reach her home as quickly as possible.
Mrs. Neal testified that the flares were not on the road, and that the vehicles were not lighted. It is quite clear that she is woefully mistaken. Why she failed to see the flares and lights in time to avert the collision is difficult to answer. It is charged that she was at the time under the influence of hard liquor. She denies positively having drunk any intoxicating liquor that night; and, in fact, denies that she ever imbibes even beer. Two witnesses contradicted her on this score. One testified that he sold to her and she drank in the night club where he worked, three bottles of beer, while another witness testified that he saw her drink one bottle therein. In this connection it is pertinent to recall that Mrs. Neal, accompanied by her daughter, while motoring for several hours prior to the accident, spent time at several night clubs and was returning home, some twenty-five miles distant, at the early hour of one o’clock on Sunday morning, when the tragedy occurred.
After this opinion had been written appellants’ counsel filed supplemental brief in support of their contention that the stalled truck and trailer were not protected by burning flares, nor by lights, as required by law. They cite as favorable to their position the very recent case of Bertrand v. Combs et al., La.App., 50 So.2d 477, et seq. In that case there was a sharp controversy as to whether flares were properly placed and burning, and the lights of the stalled vehicle on, when the rear end collision occurred. The 'Court resolved the issue against the contention of the defendants, and gave judgment for the plaintiff. This •action was eminently correct, in view of the factual findings. The situation is quite different in the instant case. The factual issue has been resolved against the plaintiffs’ contention as regards the flares and lights.
For the reasons herein stated, the judgment from which appealed, is affirmed with costs.