TALIAFERRO, Judge.
This suit in the Lower Court bears No. 36,491. It was consolidated for trial below with No. 36,492. In each suit the plaintiff seeks to recover damages that resulted from the same motor vehicle accident. Separate judgments, however, were rendered and signed by the District Judge. In this Court suit No. 36,492 will be designated as No. 7659%. McKnight v. Tatman, La.App., 53 So.2d 191.
At about the hour of 11:15 p. m. on August 13, 1947, the truck and semi-trailer of Wilson J. Tatman, being then operated by *188 his agent, Wallace Matt, loaded with several head of cattle and traveling northerly on United States Highway No. 71, about four miles north of the City of Alexandria, Louisiana, was stopped by officers of the Division of State Police, Department of Public Safety of the State of Louisiana, and inspected to ascertain if it carried physical evidence to identify it as the hit-and-run vehicle that had. collided with another motor vehicle in a village some distance south of the City of Alexandria, Louisiana.
The truck and trailer were approximately feet wide and together were 47 feet long. When stopped they were entirely on the right lane of travel, leaving 26 feet of open road (concrete and shoulder), on the left or west side. While the officers were inspecting the vehicle and questioning Matt, a Studebaker car, owned and then being operated by Robert C. Bowers of Colfax, Louisiana, approached from the south at a rapid speed, and violently collided with the left rear corner' of the trailer. . Bowers was injured, as also was plaintiff, McCain, riding on the rear seat of the car, while Howard Luther McKnight, riding' beside Bowers, was killed from the force of the impact.
Plaintiff herein sued for damages and impleaded as defendants, Wilson J. Tatman and his insurer, Great American Indemnity Company of New York, and his driver, Wallace Matt; also, the highway officers, Troopers Phillip Higdon and E. C. Lyles, and Sergeant W. E. Penny.
The accident is accredited to the concurring negligence of the officers in stopping and allowing to remain stopped on the paved portion of the highway, the truck and trailer, and to the alleged negligence of Matt in not- driving his vehicles from the highway onto- the spacious road shoulder at his right side, while the officers were performing their duties of inspection, etc.
Plaintiff also alleged that while flares had been placed on the highway by said officers, the truck and trailer were signaled by them to stop and were allowed to stop below the most southern flare, which in itself was an act of negligence.
It is additionally alleged that under the law it is made the duty of state troopers to prevent illegal parking on and obstruction of state highways, and that by failing to observe this law, but, on the contrary, permitting its breach by allowing the vehicles to remain stationary thereon, without adequate warning of their presence by flares, fore and aft, was actionable negligence and the proximate cause of the collision.
It is also alleged by the plaintiff that when approximately 150 feet south of the parked truck and trailer, the Bo-wers car met and passed another vehicle and in doing so its lights were dimmed, as were those of the other car; that after said other car passed, Bowers again switched ■ on ■ his bright lights, at which time he was entering a curve in said highway; that Bowers had his car under complete control, and as soon as he saw the obstruction created by the parked truck and trailer, he applied his brakes and did all that was possible to avert the impending collision. He affirmed freedom of fault on his part as a cause or contributing cause of the accident.
Defendants, Tatman, Matt and the insurance company filed joint answer which denied articulately all allegations designed to serve as an integral part of the basis of the alleged cause of action. Amplifying, they aver that at the approximate location alleged, Matt observed a road block established by three patrolmen, some distance ahead (north) of him, and also observed the flares that had been placed in the center of the highway, some distance apart, as well as the three highway men with burning flashlights; that for said reasons, and at the command of one of said officers, he brought the truck and trailer gradually to a stop; that he remained so immobilized for a few minutes and then the collision occurred; that all lights on the vehicles, including six rear lights of the trailer, were burning, and acted as notice of the location of the vehicles, which was accentuated by the presence' of the patrolmen with flashlights, and the flares; that notwithstanding all this, the Bowers car was carelessly and heedlessly driven into the trailer.
These defendants specially plead that the accident was the result of the joint negligence of Bowers, the 'highway patrolmen in flagging and stopping defendant’s truck *189 and plaintiff’s want of care as a guest passenger in the Bowers car, in that he was riding therein while, under the circumstances, it was being driven at an excessive speed; that he negligently failed to observe the parked truck on the highway ahead of him, with bright lights thereon, plainly visible to one keeping a proper lookout; that he was also negligent in failing to observe the road block and the signals given by the patrolmen and in failing to warn the driver of the car, and to protest at his conduct.
In the alternative, should it be found and held that defendants Tatman and Matt were guilty of negligence, causing or contributing to the accident, these defendants, employing the above related facts and acts of the plaintiff as a predicate, urge that he is barred from recovery because of his own contributory negligence, which, they aver, was the sole and the proximate cause of the tragedy.
The defendants, Penny, Lyles and Rigdon severed in their answers, but there is not a great deal of difference, in substance, between them. Each' denies that he was guilty of any sort of negligence for the part he, directly or indirectly, played in stopping the truck and trailer and detaining them briefly on the highway while being examined in obedience to orders. They each resist the demand on the samé grounds and urge the same defenses and pleas as are urged by their codefendants, insofar as applicable. In addition, these defendants' plead that Bowers, McKnight and plaintiff herein were returning from a trip to Baton Rouge, where they had gone on a joint mission and adventure, and because of this the negligence of Bowers, in the operation of his car prior to and at the moment of the accident, is imputable and should be imputed to plaintiff.
Plaintiff’s demand was rejected and his suit dismissed at his cost. He appealed to this Court.
The record is unique in that, while questions of fact are involved, it is barren of testimony from the mouths of witnesses. Not one testified on the trial. The facts are, in the main, not contradicted. These were established by ex parte written statements of highway patrolmen, of defendant Matt and other witnesses, by maps, pictures, etc., and stipulations of counsel in Court.
The headquarters of the Department of Highways in Alexandria, Louisiana, on being advised that a collision between motor vehicles had occurred in Livonia, Louisiana, and that one of the drivers, in his vehicle, had fled the scene, immediately set in motion means to apprehend him, if possible. To this end the two named troopers and Sergeant Penny were assigned to establish a block on United States Highways Nos. 71 and 165 at the location where the accident occurred. This was done by placing on or about the medial line of the concrete portion of the road, some 300 feet apart, two reflector flares. These could be seen by motorists from the south and north for several hundred feet, if keeping a proper lookout. Each trooper was using a red light to flag motor vehicles while Sergeant Penny was using a flashlight.
Sergeant Penny was stationed north of the south flare and was the first to observe the Tatman truck as it came over the L. & A. Railroad overpass, some 1,600 feet south of him. At that hour traffic there had ceased to be heavy. He flagged the driver with the flashlight, who promptly stopped the truck a distance of 20 feet below the south flare. Sergeant Penny asked Matt, the driver, from whence he had come, to which he replied: “Opelousas”,- and then passed on to the rear of the trailer. After a brief inspection of the physical condition of its rear end, he started back toward the cab of the truck and met Trooper Lyles at the center of the left side of the trailer, who remarked about some mark on the trailer, and suggested that further questions be asked the driver. Sergeant Penny says: “I had in mind to have driver move the vehicle off of the road to question him about hit and run at Livonia * * * Just as I got to cab and asked driver the direction of his travel, I heard a car approaching and turned around and saw Trooper Lyles flagging with his red light. This car seemed to be traveling at a rapid rate of speed. I then noticed the car traveling sideways tO' center of the road, and I saw Trooper Lyles jump and run across concrete to avoid being struck by the car.” The collision then occurred.
*190 Measurements taken at the scene disclosed that the road there, concrete portion and shoulders, is 52 feet wide. There was clearance of some 26 feet west of the truck and trailer, and over 14 feet east of it. It is made clear that the shoulders, wide and spacious, were about on a level with the concrete slab and could be safely traveled by motor vehicles.
The time that elapsed between the stopping of the truck and the collision could not be definitely proven, but surely it did not exceed a few minutes, at most.
Mr. Robert C. Blankenship of Alexandria, about 45 minutes prior to the collision, driving north in his car, stopped at the southern end of the block, after observing the waving by a trooper of a “bright, red light.” His headlights were then tested.
Mr. Bowers, in written statement, relating facts as they transpired immediately before the collision, says: “About 4 miles north of Alexandria, I was driving about 60 miles per hour. The highway at this point crosses a viaduct of the L. & A. R. R. and bears at an angle of about 45° to the west or left. Another car which I later learned was driven by Bob Blankenship was heading south and passed me from opposite direction, both drivers dimming their lights at this curve since my lights were mostly focusing on the east shoulder of the highway as the road declined to the west. The viaduct is 1,600 feet from the point of impact at the time of the collision. When my lights again focused straight onto the highway I saw the rear of the truck trailer. I was about 100-150 feet from the rear of the truck at that time. I applied my brakes and car was slowed to about 30 miles per hour and had pulled to the left, gradually to avoid turning over. My right side of the Studebaker, just about the right door, contacted the left rear side of the trailer.”
In this statement, Mr. Bowers gives no reason or excuse why he did not see the flares, especially the one nearest him, nor why he did not observe the waving red light in the trooper’s 'hand, as did Mr. Blankenship; nor the many lights at the trailer’s rear end.
The slight curve in the road, as he says, did cause his headlights to focus mainly along the east side of the highway, but it must be recalled that the truck and trailer were also' on this same side; and, again the focusing of the headlights should not have militated against seeing the flares, the trooper’s waving light and the well lighted sides and rear of the trailer.
Plaintiff says that immediately prior to the collision he was looking to his left, thinking of a matter that arose in his home town of Colfax, and further says: “About that time I noticed that Bowers had released his accelerator and I looked .forward and saw the rear of the parked truck and about that time he applied his brakes.” He estimated the distance then from the trailer as being 50 or 60 feet.
As regards the liability vel non of Tatman, his driver and his insurer, their counsel properly propound the following question, viz.: “Is a truck driver, who stops his well lighted vehicle on a highway, in obedience to an order of the state police, responsible in damage because a car being driven some 50 or 60 miles per hour collides with it, despite attempts on the part of the. state police to flag it down?”
We have to give to this question a negative answer, especially so when the detention has lasted only a few minutes.
In a way, such a driver is then .not only under suspicion, but under technical arrest. It is his duty to implicitly obey the orders and directions of those who are detaining him. In the instant case it appears that it was the purpose of the Sergeant to direct the driver to move his vehicle on to the road shoulder, but the sudden, rapid approach of the Bowers car required the adoption quickly of other means in the hope of averting the collision that did occur.
Appellant plants his case upon the fundamental proposition, denounced by statute, that it was negligence per se to stop and have stopped on the right side of the highway the truck and trailer, as was done. He relies upon Rule 15(a) of the Highway Regulatory Act, No. 286 of 1938, LSÁ-RS 32:241, subd. A, which reads: “No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to *191 parle or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen (IS) feet upon the main traveled portion of said highway opposite such standing vehicle shall be left free passage of other vehicles thereon”.
It would seem obvious that the sort of parking the lawmaker had in mind in adopting this rule, was the voluntary act oí stopping of a motor vehicle on a highway and allowing it to so remain for an appreciable length of time, without lawful cause or excuse. It has been so held by several decisions of this and other appellate courts of this state. See Beach v. Union Brewing Corporation, La.App., 187 So. 332; McCook v. Rebecca-Farbacher, Inc., La.App., 10 So.2d 512.
Such parking has been excused when done out of forced circumstances and emergencies.
It is not questioned that the highway patrolmen had the legal right to stop Matt and to question him, as was done, nor is it questioned that it was Matt’s legal duty to stop his vehicle on command of said officers. Had he refused to do otherwise, he would have committed an offense and been subject to fine and/or imprisonment by prosecution.
Both sides concede that this case is without precedent so far as their research has revealed, and we are sure it has been extensive. We share the same experience.
Assiduous counsel of Tatman, et al., take some comfort from the holding in Marquis v. Hartford Accident & Indemnity Co., La.App., 40 So.2d 534, decided by the Orleans Circuit, and published subsequent to submission of the present case for decision. The case holds that it is negligence for a motorist not to obey manual signal or verbal direction of traffic officer even though such signal or direction is at variance with signal given by traffic light.
So far as applicable to the present case, the Marquis case simply means that Matt was not negligent or at fault in stopping his vehicles on the highway and remaining at stop until directed by the traffic officer to proceed on his journey. We believe this to be sound ruling.
As regards the charge of negligence against the Sergeant and the two Troopers, we experience no difficulty in exonerating them from any degree of actionable negligence for the part each played in the tragic accident. Of course, had they detained Matt on the road for a time greater than was done, and as was necessary, more serious questions would be posed. In that case, it would be necessary, perhaps, to consider the question of proximate cause, for surely Bowers was grossly negligent, the imputation or not of such negligence to plaintiff, and/or independent negligence on his part. The conclusions reached by us and herein announced obviate decisions on these points.
For the reasons herein assigned, the judgment from which appealed, is affirmed. Plaintiff is cast for one-half of the costs incurred in the filing, trial and appeal of the consolidated cases.