McINNIS, Judge.
This is a demand for $26,686.30, which plaintiff claims as a result of injuries sustained in an automobile and truck collision on Highway 171 in DeSoto Parish near the line of Caddo Parish.
After a trial before a jury his demands were rejected, and he prosecutes a devolu-tive appeal here. ’
The collision' happened in the following manner: Plaintiff was riding in the back seat of a Chevrolet Sedan owned and being driven by Carl Shelton. They had left Mansfield, where they lived, at about 4:45 A.M. February 26, 1952, on the way to Sligo to work in the oil field. H. E. Scott was also riding in the Chevrolet with them.
Early that morning, 3 :00 or 4:00 o’clock A.M., Waldo Beebe, his wife and his son Donald Eugene Beebe and Eugene Corriel, son-in-law of the elder Beebes, left Shreveport in a Kaiser car known as a Henry J, intending to drive to Hornbeck. Donald Beebe was driving and Corriel was on the front seat with him and Mr. and Mrs. Walter Beebe were on the back seat. As they reached the place where the accident happened, the lights on the car went out because of a blown out fuse. The pavement was damp and the shoulder of the road too narrow to allow room to park, so the car was stopped on the west half of the pavement, and Donald Beebe tried to fix the lights, but had no extra fuse and could not get the lights turned on. After they had been there some 15 to 25 minutes, they saw a truck as it topped a hill some 750 feet or more to the south, approaching them. Waldo Beebe had a flashlight, and *648 to warn the truck driver of the presence of the car parked without lights, and also to stop him to try to get. a fuse to fix tire lights, he put his arm out. of the left front window of the car and flagged with it, and the truck driver, William Lee Burt, stopped the truck on the right, or east side of the pavement, so that the road was effectively blocked to traffic. The truck had barely stopped when the Chevrolet traveling north, the same direction as the truck, ran into the right hand corner of the truck and left the road and went into the ditch on its right, and turned around so that it was headed south, the direction from which it had come.
As a result plaintiff sustained a com-minuted fracture of the left humerus at the junction of the upper and middle thirds, and other bruises and contusions. The fracture required open reduction, and wearing a cast some ten weeks and he had to undergo treatment for some time, including physiotherapy.
Many of the facts surrounding the happening of the accident are in serious dispute. Plaintiff alleges that at the time-of th.e accident he was a guest passenger in the Chevrolet car of Shelton. This is denied and it is affirmatively alleged that plaintiff and Shelton were engaged in a joint venture, each having the right to control the operation of the Chevrolet car, and that the negligence charged to Shelton is attributable to plaintiff.
Plaintiff also alleges that the truck was completely unlighted and there were np flares or warning devices of any kind on or about the truck and trailer. This is also denied by defendant, and it is affirmatively alleged that prior to and at the time of the collision, and thereafter, the lights on the truck and semi-trailer were functioning properly and burning, including headlights, taillights, clearance lights, and brake red warning light; that in addition the rear end of the semi-trailer was equipped with reflectors.
Plaintiff alleges that the Chevrolet was being driven at a speed of not more than 45 miles an hour. This is denied by 'defendant, and it is alleged on information and belief that the car was being driven at a rate of speed in excess of 65 miles, •per hour. • •
Specific acts of negligence charged to the truck driver are:
(a)' “Parking the Reo truck and semitrailer on a public highway at night abreast of another vehicle without leaving sufficiént room on the highway for other traffic to pass, in violation of the provisions of Title 32 Section 241 of the Louisiana Revised Statutes of 1950;
(b) “Parking an unlighted truck and trailer on a public highway at night without placing any warning flares or signals of any kind to alert approaching traffic, in violation of the provisions of Title 32 Sections 241 and 441 of the Louisiana Revised Statutes of 1950;
(c) “Parking a truck and trailer on a public highway in such a manner that a clear view of said vehicle did not exist from a distance of at least 200 feet upon the highway, in violation of the provisions of Title 32 Section 241 of the Revised Statutes of Louisiana for 1950.”
All these charges of, negligence are denied and defendant charges that the accident was'due solely and only to the negligence of Carl Shelton, in the following respects :
(a) “In failing to keep his vehicle under complete and proper control;
(b) “In failing to keep a proper lookout;
(c) “In driving a vehicle on the highway at night without proper headlights ;
(d) “In traveling at an excessive - rate ¡of speed, which your defendants aver was in excess of 60 miles per hour;
(é) “In driving into the rear end of the Reo truck and semi-trailer, which was coming to a stop on the highway in obedience to a flashlight signal;
(f) “In failing to avoid the accident -by timely application of his brakes;
(g) “In attempting to overtake and pass a preceding vehicle on the highway when his left lane of traffic was blocked.”
Defendant charges that plaintiff knew the Chevrolet sedan was being driven at an excessive rate of speed and that the head *649 lights were not functioning properly but he failed to warn the driver, or to object thereto, and assumed the risk of any thing that might happen. That plaintiff saw or should have seen the Kaiser car parked in the west lane of traffic, but failed to warn the driver of its presence on the highway.
Defendant pleads in the alternative that only in the event the truck driver is found guilty of any negligence which contributed to the collision, in that event, Shelton saw or should have seen the car and truck, and could have prevented the accident by timely application of the brakes, or, other action, and that he had the last clear chance to avoid the accident, • and that he is solely responsible therefor. . ,
In the further alternative, in the event the truck driver is found guilty of any negligence which was a proximate cause of the accident, that in that event, the plaintiff was guilty of the negligence alleged above, which contributory negligence is pleaded in bar of the claims asserted by him.
The following witnesses testified on behalf of plaintiff as to the manner in which the accident occurred: Plaintiff, Carl Shelton, R. C. Lafitte, E. T. Goldsby, J. A. Edwards, R. E. Jones, H. E. Scott and Vernon Smith.
Carl Shelton testified that he was driving his green four door Chevrolet on the morning of the accident. H. E. Scott was on the front seat with him, and plaintiff was on the back seat. They left Mansfield shortly before 5:00 o’clock A.M., and the accident happened about 5:30 A.M. He said the pavement was wet and slick and that at that time it was dark and foggy. In answer to a question he said the fog was dense, and this affected visibility; that he was driving 40 to 45 miles an hour; they left Mansfield a little earlier than usual because the weather was bad and foggy. They were to start work at 7:00 o’clock A.M. at Sligo, 38 miles from the scene of the accident. The road is hard surfaced with two lanes of travel and has narrow shoulders and ditches on each side. The road is straight and down hill from the top of the hill to the scene of the accident. He says that he did not see the truck until he was within 50 to 75 feet from it and he applied his ■ brakes and started to pass it .on the left side but saw the other car parked .there, and pulled back to his side of the road and hit the back end of the truck; that he did not see any lights or reflectors or any warning devices or signals, and no flares put on the highway ; that there was no room to go around the cars on either side and no room to go between them. He says that ás he turned his car back to the right he saw the driver of the truck with his head out of the cab door, and that after the three got out of his car he came back on the highway and talked to the truck driver and asked him why he stppped and blocked the road,, and the driver told him he did not have any lights. He says that after the accident the truck and the Henry J were side by side on the road. He says Scott and Howell got in the cab of the truck and the driver started off with them', and he went and stopped the driver and told him not to move the truck. In about 15 minutes Mr. Vernon Smith came along and picked the three of them up and took them to Shreveport to the hospital. Plaintiff has worked for him since 1947 or 1948.
On cross-examination he said that he, Scott and Howell had an arrangement that they would take turns driving their cars to work, and that this arrangement was made a year before the accident. He thinks the distance from the top of the hill is 300 feet, more or less. Pie did not notice any damage to the back end of the trailer. He does not remember either of the parked vehicles being moved before Smith left with them for the hospital, but he admits one of them had to be moved before Smith could get through.
R. C. Lafitte was in a car. that passed around a truck, and saw no lights on it or any flares. E. T. Goldsby was in the car with Lafitte. He was asleep on the back seat and raised up and looked out and saw the truck as he was' passing, and saw no lights on it. Sergeants J. A. Edwards, Jr., and R. E. Jones of the State Police received a call advising ■ of the accident at 6:15 A.M. and reached the scene at 6:45. They talked to the truck driver and the Beebes. There were no others there then. They do *650 not recall whether there were' any flares or reflectors out at that time. It was daylight then. They checked the truck and reported no defects, which they say means that the lights and brakes were tested and found working.
H. E. Scott testified about the same as Shelton as to the truck and car both being stopped,, and the truck not having any lights on it, and that it was dark colored and film coated. He was dozing when Shelton applied the brakes and that woke him up. He also said there was fog, some places light and some heavy, and he testified to the pooling of the three cars, taking turns in transporting the three of them to work. He also has a suit pending for some injuries he sustained in the accident.
Plaintiff’s testimony was the same as Shelton and Scott as to foggy condition of the weather, and no lights on the car or truck. He was employed at. a filling station at the time of trial at $140 a month. With reference to the arrangement about alternating cars his testimony was the same as Scott’s. Both said they had no control over the driver, Shelton and that if he had started toward Lake Charles instead of Sligo they would have gone along.
Vernon Smith lives at Keatchie and has a service station in Shreveport, tie was on his way to his station and shortly after the accident he reached the scene. He says that as he topped the hill south of the accident he could see that something was wrong; that over on the right side of the road was one headlight shining up the road, then he saw that the road was blocked and he stopped. Directly in front of him was the truck and on the other side of the truck was a car headed south. There were no lights on this car and he does not remember whether there were lights on the truck, but the only light he can remember is the one on the car on the right of the road. He saw no fusee in the road. He estimated the distance from the top of the hill to be SO to 75 yards, but says he is not a very good judge of distance. The truck driver asked him to take the three men to the hospital, and he did, after the Kaiser car was moved so he could get through. He can’t say whether the truck had reflectors on it or not, but he says he saw no one flagging traffic.
For defendant, Mrs. Mary Beebe, Waldo Beebe, Eugene Corriel and William Lee Burt (driver of the truck) testified as to the accident.
Mrs. Mary Beebe says they left Shreveport after midnight, the morning of February 26, 1952, on the way to Hornbeck. At the scene of the accident the lights on the car went out and the car was parked, she says, as far as possible on the shoulder of the road. They saw the truck as it came over the hill, and her husband flagged it with a flashlight. The truck stopped by the side of the car, and just as it stopped she saw the Chevrolet car come over the hill. After it came some distance the driver applied the brakes, but came on and struck the truck. She says the truck had its lights on, and that the 'Chevrolet was running fast, but made no estimate of the speed per hour.
Waldo -Beebe testified about the same as his wife as to the lights on the truck. He is the one with the flashlight who flagged .the truck to stop. He says the truck had lights around on the van and that he could see the lights as the truck approached. He says the truck had stopped when the accident happened, but the driver had not had time to get out of the truck. He saw the Chevrolet as it came over the hill, he says running fast, and when it got close the driver turned left as if to pass, and then turned back to the right and at that time he heard the brakes squeal and then the Chevrolet hit the truck. He says when he got out of the car and went back behind the truck the lights -were on at the back, that is the taillight and the stop light. He noticed no fog on the road. He estimates the distance of the Chevrolet from the truck, when the brakes were applied, at 150 to 175 feet.
Eugene Corriel fixed the time his party left Shreveport at about 3:30 or 4:00 o’clock A.M. His testimony is about the same as Mr. Beebe’s as to the lights on the truck and fast speed of the Chevrolet. After the collision he went back of the *651 truck and saw the taillight and stop light on, and saw the reflectors. This witness says that shortly after the accident the truck driver put reflectors out on the road some distance to both front and rear of the truck and one at the side of it.
William Lee Burt, the truck driver testified that he left Lake Charles at 7:30 o’clock P.M. February 25th, and that he checked all lights on the truck at that time and all were operating; that the reflectors on the mud guards were in good condition. He made a number of stops on the way to Shreveport, handling local freight and mail and some express and baggage. He continued to check the lights at the various stops he made, the last stop being the one at Mansfield at which time all lights were burning, and that he did not turn the lights off at any time; that immediately after the accident he went back to help take the people out of the Chevrolet and all the lights on the truck were burning. About the only difference in his testimony and that of Mr. and Mrs. Beebe and Corriel is that they say the truck had just stopped, and Burt says it was still moving slowly when it was struck by the Chevrolet. Burt says he was asked by Shelton to take the three of them to the hospital, but he knew he could not move the truck until the police had checked it. The truck was 28 feet long and 7 feet, 11 inches wide. It was painted red with silver colored top and trim.
Frank Hebert, filling station attendant at Brown Motor Company, Mansfield, who works from 7:00 o’clock P.M. to 7:00 o’clock A.M. seven days a week testified that Burt, driver of the truck involved in the accident, stopped at the station on the morning of February 26, 1952, and parked the truck so that the left rear and left top clearance lights and the taillight were visible to him, and these lights were on at that time.
Philip Minder, shop foreman for defendant testified that his duty is mostly to inspect the equipment, and see that everything is in top shape before it leaves; that all equipment is inspected as to lights, brakes, tires, batteries, anything that pertains to the safe operation of the truck; the equipment is checked at the shop as it leaves to be spotted at the freight house to be loaded. The accident was reported before the truck came to the shop. The only damage to it was the loss of the right mud guard on which one of the reflectors is located. He checked the lights and they were all burning. The truck and trailer were again put in service February 27, 1952.
Forrest McDonald, supervisor and safety man for defendant, says his duties are to hold safety meetings with the drivers regularly; file accident reports. The accident of February 26, 1952 was reported to him about 7:00 o’clock A.M. ' The truck arrived shortly afterward; he inspected it to see what damage it sustained and to see if everything was working as it should be. He saw no damage except loss of the mud guard; the lights were all in place, but he cannot remember whether he turned them on to see if all were burning.
The record shows that a summons was issued to Donald E. Beebe to appear as a witness for defendant, but was not served because he was in North Dakota at the time.
Photographs of the scene of the accident, taken some ten months after the accident happened, show a straight unobstructed road for a distance of nearly 900 feet to the top of the hill to the south. The record discloses that the condition there is the same as at the time of the accident.
Photographs of the trailer taken the same day the photographs of the road were taken are in evidence. Burt says it is in the same condition as to lights as it was at the time of the accident, and he marked on one photograph the location of the various lights.
These photographs were made by Frank McAneny, and he measured the distance from the top of the hill to telephone pole no. 267 and the distance is 898 feet. The accident happened 25 feet south of this pole.
After consideration of the foregoing we are of the opinion that plaintiff has not established the charge that the truck and trailer did not have lights. The *652 preponderance of the evidence leads to the conclusion that it was well lighted. The charge that there was not a clear view of the truck and trailer for a distance of 200 feet is likewise not made out.
We feel that plaintiff failed to establish that there was any appreciable amount of fog on the highway, however, if there was fog, this increased the duty of Shelton to exercise greater care. We believe that he was driving faster than 45 or 50 miles per hour, and that he was not keeping a proper lookout.
LSA-R.S. of 1950, 32:241, provides:
“A. No person shall park any vehicle, attended or unattended, upon the main traveled portion of any highway, outside of a business or residence district, when it is practicable to park it off the main traveled portion of the highway. In no event shall any person park a vehicle, attended or unattended, upon a highway unless an unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such parked vehicle is left free for passage of other vehicles, nor unless a clear view of such vehicle exists from a distance of at least two hundred feet in each direction upon the highway. Even then, if such vehicle is left parked, attended or unattended, one half hour after sunset or one half hour before sunrise, the person parking it shall display appropriate signal lights thereon, sufficient to warn approaching .traffic of its presence. * * *”
Plaintiff urges that the driver of defendant’s truck violated this section' and also 32:441, providing for setting out flares when vehicles are stopped on or adjacent to the traveled portion of the highway.
We have already found that the truck in this case was well lighted, and it is clearly shown by the record that the truck driver slowed down and stopped because of the flashlight flagging by Beebe, and that the truck had barely stopped when the collision took place. The truck driver did not have time to place flares before the collision.
Every violation of a statute does not necessarily imply liability. It is only when the violation is a proximate cause of the injury that the violator may be held liable.
In McCain v. Tatman, La.App., 53 So. 2d 187, a truck driver was stopped by State Police, looking for a hit and run driver. The truck was well lighted and on its right hand side of the highway. No flares had been put out. The automobile in which plaintiff was riding and which was traveling 50 or 60 miles an hour collided with the truck, despite efforts of the State Police to flag it down. It was held that neither the truck driver nor the State Police were guilty of negligence.
Neal v. Deax, La.App., 51 So.2d 852, has also been cited by defendant, but in that case the truck had been parked partly on the highway for some 24 hours, and flares were put out. The truck driver was held to be free of negligence.
The charge that the truck driver parked the truck abreast of another vehicle without leaving room for other traffic to pass is the only charge that plaintiff made out with any degree of certainty, and in view of the circumstances under which the driver of the truck was stopped momentarily, we are of the opinion that he was not negligent. He had not parked the truck on the highway in the sense we understand parking is prohibited. The truck had just stopped in response to the flashlight flagging, and we believe he should have stopped. It was unfortunate that he happened to stop beside the automobile that had no lights.
From what is said above we are of the opinion that the proximate cause of the collision and resulting injury to plaintiff was the excessive speed of the automobile Shelton was driving, combined with his failure to keep a proper lookout, and to see what he could and should have seen.
For these reasons the judgment appealed from is affirmed at the cost of plaintiff-appellant in both courts.