60 So.2d 131 (1952)
JENKINS
v.
A. R. BLOSSMAN, Inc.
No. 3568.
Court of Appeal of Louisiana, First Circuit.
June 30, 1952.
*132 Christovich & Kearney, New Orleans, for appellant.
Henry A. Mentz, Jr., Hammond, for appellee.
DORÉ, Judge.
This suit arises out of a rear-end collision by a 1946 Hudson Sedan belonging to the plaintiff, Norman E. Jenkins, with a large truck belonging to the defendant. The collision occurred at 6:00 p. m., just after dark, on January 2, 1951 on Highway 190, on the west side of Albany, Livingston Parish, Louisiana. At the time of the collision it was raining and the paved highway was wet, muddy and slippery. On February 2, 1951 the plaintiff filed his original petition alleging that just prior to the accident he was driving his 1946 Hudson Sedan in an easterly direction on Highway 190 through Albany; that as he came into Albany he slowed down to about 20 miles per hour, and noticed that a large truck belonging to defendant, was on the highway; that there were no lights or signals on the said truck, and petitioner could not tell that the truck was stopped since it had no signals out of any kind; that petitioner immediately applied brakes but that it was impossible to stop due to the slick condition of the road; that defendant was negligent in stopping on the highway after dark without parking off the highway on the shoulders of the road, and by failing to place flares or any other signals behind the truck to indicate that he was parked; that petitioner shows that he did everything in his power to avoid the accident, and was in no way contributorily negligent; and, that the above negligence of defendant was the sole and proximate cause of the accident and resulted in damages as follows:

a. Repair and depreciation to
 1946 Hudson Sedan ......... $ 450.00
b. Loss of use of vehicle in petitioner's
 business at $5 per
 day for 20 days ........... 100.00
c. Medical service rendered to
 petitioner ................ 25.00
d. Pain and suffering .......... 250.00
e. Shock, bruises, lacerations on
 face ....................... 200.00
 _________
 Total $1,025.00

On March 6, 1951 the defendant filed an exception of vagueness to plaintiff's original petition and also an exception of no right and no cause of action.
On March 13, 1951 plaintiff filed an amended petition in which he merely increased Item "a" of his claim from $450 to $702 and added Item "f", "Loss of one week's work$75.00"; thereby increasing his original demand to $1,352.
On April 2, 1951 the defendant filed its answer to plaintiff's original petition and supplemental petition admitting that the collision occurred at the time and place alleged but denying that it or any of its employees were negligent or at fault in any way in connection with the accident and further averring, in further answer, that its truck, driven by Frank H. Stafford, developed motor trouble just outside of Albany; that another truck driver stopped to give aid to Stafford and followed defendant's truck into Albany so that necessary repairs could be made; that after reaching Albany and after the second truck, hereinafter referred to as the "Moss truck", had pulled into a service station on the north side of the highway, Stafford slowed his truck preparatory to making a left turn across the highway, signaling with his left hand to show his intention; that Stafford noticed a vehicle going west, or in the opposite direction, and was waiting on his side of the road for traffic to clear when the truck was suddenly and forcibly struck in the rear by plaintiff's car; that at the time of the accident it was beginning to get dark and all running lights, front, rear and *133 side, were on and burning on the defendant's truck; that the collision was caused solely through the fault and negligence of plaintiff in that he (1) failed to keep a proper lookout, (2) failed to maintain control of his vehicle, (3) ignored or failed to see Stafford's signal showing an intention to turn left, (4) failed to stop or even slow down in the face of the large lighted truck in front of him, (5) in following at too close a distance behind defendant's truck to safely stop his vehicle and (6) in overdriving his headlights so as to be unable to stop within the range thereof. In the alternative, and only in the event that the court should find fault or negligence on the part of defendant's truck driver, the defendant pleads contributory negligence on the part of plaintiff as a complete bar to his recovery.
The extract of the court minutes shows that on March 9, 1951 the court maintained the exception of vagueness and granted the plaintiff ten days in which to amend his petition and the court referred the exception of no cause and no right of action to the merits.
After trial of the merits, the district court rendered judgment in favor of the plaintiff Norman E. Jenkins and against the defendant A. R. Blossman, Inc., in the total sum of $932, itemized as $702 for damage to plaintiff's automobile, $75 for loss of one week's work, $25 for doctor's bill and $100 for physical pain and suffering, plus five (5%) per cent per annum interest from judicial demand until paid and all costs. The defendant has appealed.
In its appeal the defendant again urges its exception of no right and no cause of action, which exception is actually one of no cause of action and which is based upon the alleged affirmative showing of contributory negligence on the basis of plaintiff's petition. This same question was considered in the case of Grigsby v. Employers Liability Assur. Corp., La.App., 57 So.2d 910, and disposed of as follows:
"The rule, generally speaking, is that contributory negligence is a special defense which cannot be pleaded on an exception of no cause of action, but the rule has its exception. In Dodge v. Bituminous Casualty Corporation, App.1949, 214 La. 1031, 39 So.2d XXX-XXX-XXX, the Supreme Court had this to say:
"`As a general rule, contributory negligence being a special defense cannot be pleaded on an exception of no cause of action, since negligence is a question of fact which must be determined by a trial on the merits. There is, however, an exception to this general rule. For example, if the inference can be drawn from the facts alleged by the plaintiff showing him to have been guilty of contributory negligence, this negligence can be determined as a matter of law by the judge. McMahon, Exception of No Cause of Action in Louisiana, 9 T.L.R. 17, 22 (1934). The first clear rule on this subject was formulated in Gibbs v. Illinois Central R. Co., 169 La. 450, 125 So. 445. In that case the court held that an exception of no cause of action based on plaintiff's contributory negligence should not be maintained unless the facts alleged by the plaintiff show affirmatively that he was guilty of negligence and that such negligence was the proximate cause of the accident. This rule places the determination of each case on a trial on the merits rather than on paper pleadings. A decision on the exception of no cause of action is not a fair way to determine the rights of litigants, since the facts alleged in each case raise several problems materially affecting those rights which can best be solved by the hearing of evidence in the case.

"`In West v. Ray, 210 La. 25, 26 So.2d 221, 224, the Court stated:

"`"We conclude therefore that an affirmative defense, presented through exceptions or motions tried or triable only on the face of the petition, should not be sustained unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based."'" (Italics ours.)
Following the rule stated in the above case and since no inference can be *134 drawn from the facts alleged in plaintiff's petition which would go to show that plaintiff was guilty of any contributory negligence, we are of the opinion that the judge's ruling, referring the exception to the merits, is correct.
The exception of vagueness was not urged after the filing of the supplemental petition, even though the supplemental petition was identical to the original petition except as to the quantum of damages. As a matter of fact, the defendant filed its answer subsequent to the filing of the supplemental petition. The exception of vagueness was therefore abandoned at that time and is not urged in this appeal.
On the merits, the questions presented are entirely factual. The first question is whether or not the truck driver of the defendant was guilty of negligence which was the sole proximate cause of the accident, thereby creating liability on the part of the defendant. The second question, in the event liability on the part of defendant is found, is what amount of damages did the plaintiff suffer as a result of the accident?
On the question of liability it seems proper to review the evidence, which is as follows:
The plaintiff testified that he was driving his 1946 Hudson Commodore in an easterly direction on Highway 190 on January 2, 1951 at about 6 o'clock p. m. following a truck, to wit, the Moss truck, and that said Moss truck, upon reaching the west side of the Town of Albany, pulled to the north lane of traffic, that is, the left lane going east, and parked in front of a service station; and then states, "I thought the road was clear and I went on and when I realized there was something else ahead of me (the defendant Blossman truck), the road was wet and the truck was the same color of the road, I jammed on my brakes and skid into the truck." He further testified that he had slowed down upon approaching the Town of Albany and that at the time of the collision with the Blossman truck he was traveling at about 20 or 25 miles per hour; that he had his dimmers on; that he had his car under control; that he could have stopped within the distance ahead which was covered by his headlights; that upon seeing the Blossman truck he immediately applied his brakes which were in good condition; that the collision occurred at 6 o'clock as shown by a clock which he looked at located at the garage or service station; that it was dark and that he had his lights on but that the Blossman truck had no lights burning and had no flares or any signal of any kind indicating its presence on the south travel lane of Highway 190, an 18 foot paved highway with shoulders on each side. Plaintiff further testified that the driver of the Blossman truck could have parked his truck on either side of the highway and that there was no reason for him to park as he did and to thereby block the highway. He further states that he did not see the Blossman truck until he was within six or eight feet from it, attributing his failure to see it to the fact that it was parked without lights burning on it and without any other warning signal; that the lights were burning on the service station across the road but that these lights were prevented from shining on the parked Blossman truck by the presence of the truck that had pulled into the service station.
A Mr. Roscoe Holton, called by plaintiff, testified that he drove by the scene of the accident shortly after it occurred and that at that time there were no lights on the Blossman truck and no flares on the highway; that the tail light on plaintiff's Hudson was burning and that his brakes were jammed and that he pulled them loose. He further states that he remained at the scene of the accident about 40 or 45 minutes until Mr. Hayden of the State Police arrived and cleared the highway. It may be noted that the State Policeman apparently investigated the collision and made some notes thereon but that at the time of trial it was discovered that he had made no report of the accident; that he no longer was a member of the State Police, and he was not called as a witness.
Henry Strahan, Sr., called by plaintiff, testified that at about 6:00 o'clock p. m. on January 2, 1951 the Blossman truck pulled off of Highway 190 on the south *135 shoulder thereof in the front of his house (some 600 feet west of the situs of the collision) obviously because of motor trouble; that as he did so the Moss truck drove up in back of the Blossman truck and the driver thereof in a loud voice asked the driver of the Blossman truck if he could help him. He further testified that the driver of the Blossman truck had lights on when he pulled over on the shoulder but that he would turn the lights off when he stepped on the starter. He further states that the driver of the Blossman truck finally got the motor started and that right afterwards he, the witness, started to town in his automobile and met his two boys and having heard the noise of the collision, he asked them, "* * * what was the matter and they said it was an accident; that the car had run under the truck." He states that he arrived at the scene of the accident about four or five minutes after it happened and that at that time the truck had no lights on its rear; that the truck was light grey or white and that the back thereof was full of mud. His testimony corroborates plaintiff's testimony to the effect that the truck had no lights burning and to the further effect that the shoulder of Highway 190 was wide enough to have parked the truck thereon.
Henry Strahan, Jr., 16 years of age, testified that he and his brother were walking home from town along the side of Highway 190 and that as they arrived at Daniel's Garage (hereinbefore referred to as "the service station") he noticed the Blossman truck stopped and parked in the right paved lane going east of the paved highway and that the motor of the truck was not running; that this was at "about dusk dark"; that there were no lights of any kind burning on the truck and that there were no flares on the highway; that the back of the Blossman truck had a lot of mud on it; that he was an eyewitness to the collision and that the plaintiff Jenkins ran in the back of the truck and that just prior to the collision he heard the brakes of the Jenkins automobile. He makes the following pertinent statement:
"* * * me and my brother were coming from toward town, Albany, and we saw the truck parked in the highway and another truck behind it was waiting for the traffic to pass before it pulled over to the garage and this truck in the front, his lights were off and the driver was trying to crank it and this truck behind him, when he could, crossed over to the service station and this truck had no lights on and Mr. Jenkins ran into it."
He further testified that his brother also saw the accident and that on the day of the trial his brother was working. He further states that it was raining at the time of the accident and that the ground was wet. With reference to whether or not the driver of the Blossman truck had time to get out and put out flares, he states that he did have time since he was parked on the highway about five minutes before the collision.
On the question of liability, the defendant produced the testimony of Houston Cotton, driver of the Moss truck, and Frank Stafford, the driver of the Blossman truck.
Mr. Cotton testified that he first saw the Blossman truck late on the afternoon of January 2, 1951 parked on the side of the road, and states, "I figured he had trouble and I pulled over and parked and asked him if he was having trouble and if I could help him and he said that he thought it was in the gas line and I helped him to fix that. He drove off and I followed him to Albany. He stopped in front of a service station and I saw his stop light come on and I figured his truck had went dead again and I pulled off under the service station and got out of my truck and saw this car come up behind the truck and waited for it to come around and so about the time I walked out in front of my truck the car did not come around the truck and he run underneath it and I ran to see if there was a car coming and then walked over to the car and saw that there was no one hurt in it."
He further testified that at the time of the accident all the lights of the truck were burning and that, "the whole trailer was lit up." He testified further as follows:
"Q. Was there any reason why the Blossman truck could not have gotten off the highway? A. I don't know.

*136 "Q. Do you know whether there was any mud on the rear of the Blossman truck? A. No, I did not notice that.
"Q. Did you notice if it was raining or not? A. It was misting rain."
Mr. Stafford, driver of the Blossman truck, testified as follows:
"Q. Would you tell the Court how that accident took place? What happened at the time of accident, immediately before the accident? A. I was having a little trouble with my motor and it was not running too goodgot this fellow Cotton, who came along and helped me, to follow me to Albany. I told him I wanted to drive into Albany and he said, `I will stay with you and help you work with it.' We finally got it almost in Albany, which was on my left as I was going east and I was stopped waiting for a car so I could make a left turn so Mr. Jenkins came up behind me; in the meantime I had my hand out waiting for this car to approach me so I could turn."
He further testified that his truck had become disabled about one mile out from Albany; that he had been proffered assistance by Cotton, driver of the Moss truck, at that time, and that Cotton followed him into Albany; that the weather was bad and that it was raining and that it was almost dark; that his lights were burning at the time of the accident including nine lights on his trailer, three on each corner thereof and three on the top and his stop light in the center and that at the time of the collision his motor was running and he was stopping so the traffic could pass and was giving a left turn hand signal; that his truck had not been stopped over fifteen seconds when the Jenkins car ran into it. On cross examination he testified further as follows:
"Q. If this Mr. Cotton was able to turn off to the left and get off the highway, why were you unable to do so? A. Mine was not running too good and I was scared to take the chance.
"Q. Couldn't you have turned off on the right? A. No.
"Q. Why not? A. The shoulder was not wide enough.
"Q. How wide is the shoulder there? A. Four or five feet.
"Q. Isn't it true that you had some engine trouble about six hundred feet from where the accident happened? A. It was further than that.
"Q. You had stopped? A. Yes, I had been stopped.
"Q. When you were trying to get your engine started didn't you turn your lights off? A. No.
"Q. You had never turned your lights off at any time? A. Not my trailer lights. I had turned my head lights off but the motor was running when he hit me.
"Q. Isn't it true that the back of your trailer was full of mud? A. Yes.
"Q. Did the mud cover up the lights? A. No."
From the above testimony it is our opinion that the plaintiff has proved by the preponderance of the evidence the following salient facts:
1. That the Blossman truck was parked in the right travel lane going eastward on highway 190 across from the service station of Daniel's Garage.
2. That at the time of parking the driver of the Blossman truck was attempting to crank his motor which had stopped and in doing so had turned off his lights in the same manner as he had done a short while before in front of the Strahan home. We feel that he remained in that manner for a long enough time to have placed flares on the highway so as to warn approaching traffic of his presence. In that regard, we are particularly impressed by the testimony of young Henry Strahan, Jr., an absolutely neutral witness. Moreover, it seems apparent that if the motor of the Blossman truck was running at the time the driver thereof stopped, he could have turned into the service station in the same manner as and before the Moss truck did so; or, at least, he could have parked his truck on the right shoulder, which the preponderance of the evidence shows was wide enough *137 for that purpose contrary to his testimony to the effect that it was not.
3. That in addition to the fact that the Blossman truck had no lights burning and that no flares had been placed on the highway, it is clearly shown that the rear of said truck was very muddy and that it was raining and the highway was wet and slick.
In the light of these conclusions of fact, the final conclusion that the driver of the Blossman truck was guilty of gross negligence is inescapable, and that said negligence was a proximate cause of the accident.
The only possible defense is that the plaintiff was guilty of contributory negligence, which was a proximate cause of the collision and there is no evidence whatsoever of negligence on his part. The evidence is clear-cut to the effect that he was driving at a rate of speed of from twenty to twenty-five miles per hour immediately prior to the accident, a reasonable speed under the circumstances existing; that he was following the Moss truck at a safe distance and that as the Moss truck turned off the highway he was confronted with an emergency created solely by the gross negligence of the defendant's truck driver and that upon being faced with this emergency he did the only thing he possibly could do, to wit, he applied his brakes immediately and to such an extent that they jammed.
The trial court did not favor us with written reasons for his judgment but he must necessarily have reached the same conclusion of fact as we have reached herein, and we cannot find any manifest error therein. We are of the firm opinion that the sole proximate cause of the accident was the negligence of the driver of the Blossman truck.
With reference to the quantum of damages, the evidence is very vague and somewhat unsatisfactory. The trial judge awarded the plaintiff $75 for the loss of one week's employment caused by his injury and $25 for medical expenses and $100 for pain and suffering. With reference to the first two items, the only evidence in the record is the uncorroborated testimony of the plaintiff that he expended about "Twenty to twenty-five dollars" for a doctor's bill and drugs and that he lost one week's work wherein he made anywhere from $50 to $70 per week depending upon the hours that he worked, also uncorroborated. In view of the fact that it would have been easy for the plaintiff to have produced corroborating evidence in support of these two items, which he failed to do, we feel that he has not sustained the burden of proof imposed upon him in that regard and that these two items should not be allowed. His uncorroborated testimony really amounts to self serving declarations.
With reference to the item of pain and suffering, the only evidence is that he suffered a slight cut on his chin which he states necessitated two stitches. For this the trial judge awarded him $100 which while a very modest award seems to us somewhat excessive in view of the slight injury sustained and the lack of showing of even a scar. We feel that an award of $50 for that item is sufficient.
The main item of damage in the case is the damage to the automobile for which the trial judge awarded the full amount claimed, to wit, $702. That award is obviously based on plaintiff's testimony that the automobile was bought by him in 1950 for $1,295.00 and that in June, 1950 he expended $150 for new tires and that his cost consists of $1,295, plus $150, less depreciation of $145, making a total of $1,300; and that he received $598 for the car as salvage on a trade-in, making the loss $702.
Plaintiff's witness, Mr. Maurin, testified that in his opinion, a 1946 Hudson on January 2, 1951 in good condition would have had a value of between $1,100 and $1,200.
Mr. Joseph Varisco, an automobile man of wide experience, testified in effect that as of the date of the accident, a 1946 Hudson Commodore had an average retail price of $985.
There is no dispute that the plaintiff received $598 as the salvage value of his Hudson, but there is a serious dispute as to the true value of the automobile at the time of the accident. We feel the plaintiff has failed to sustain the burden of proof imposed *138 upon him by merely giving his figure as to the original cost of the car plus cost of new tires and therefrom subtracting the arbitrary depreciation of $145 in arriving at the cost. We feel that the testimony of Mr. Varisco, based on his experience, and on NADA, the blue book of the automobile industry in arriving at values, to the effect that the average retail price of a 1946 Hudson of the same type as plaintiffs' and in good condition, at the time of the accident, was $985, is reasonable and subtracting therefrom the salvage price of $598, being the admitted salvage value of plaintiff's car, we arrive at the figure of $387, as a true loss sustained by plaintiff to his automobile as a result of the accident.
For the reasons assigned, it is ordered that the judgment appealed from is amended by reducing the award of $932 to $437 and that as thus amended, it is affirmed.