107 So.2d 713 (1958)
James A. MANNING et al., Plaintiffs-Appellees-Appellants,
v.
FORTENBERRY DRILLING COMPANY, Inc., et al., Defendants-Appellants.
No. 8850.
Court of Appeal of Louisiana, Second Circuit.
November 25, 1958.
Rehearing Denied December 19, 1958.
*714 Martin S. Sanders, Jr., Olla, for appellees-appellants.
Carl F. Walker, Monroe, for appellants.
Stafford & Pitts, Alexandria, for appellee.
GLADNEY, Judge.
James A. Manning and his wife, Margic F. Manning, instituted this suit against Fortenberry Drilling Company, Inc. and its liability insurer, Employers Mutual Liability Insurance Company of Wisconsin, to recover damages for personal injuries received in an automobile collision. By supplemental petition Margie F. Manning made St. Paul Mercury Indemnity Company, the insurer of James A. Manning, a party defendant. Prior to trial on the merits an exception of no cause or right of action was sustained as to demands of James A. Manning and his suit was dismissed as of non-suit. After trial judgment was rendered in favor of Mrs. Manning, against the defendants, Fortenberry Drilling Company, Inc. and Employers Mutual Liability Insurance Company of Wisconsin, for $4,500, but denied her claim against the St. Paul Mercury Indemnity Company. From the decree so rendered the defendants cast in judgment have appealed *715 and Mrs. Manning has appealed from the decision rejecting her demands against St. Paul Mercury Indemnity Company. Mrs. Manning has also answered the appeal, asking that the award be increased to $10,000. James A. Manning did not appeal.
This case arises from a vehicular collision which occurred about noon, July 8, 1955, in Concordia Parish on a dusty graveled road between Eva and Acme. The atmosphere was clear with excellent visibility except for the dust created by motor vehicles on the highway. It was a dry, hot day. On either side of the spot where the vehicles collided the road was level and straight for a considerable distance. The graveled portion of the road was about 16 feet in width with dirt shoulders, each of which is about five feet wide. Due to the level nature of the terrain the ditches upon each side of the road are shallow with a depth of only six or eight inches.
Just before the accident a large truck and trailer owned by the Fortenberry Drilling Company, Inc., driven by Charlie Whitney, was proceeding south when he experienced difficulty with the brakes locking on the truck, and brought his combination unit to a stop with the right wheels thereof over on the west shoulder. Whitney then got out of his truck and was underneath the truck attempting to adjust the brakes and "bleed" the brake cylinders or brake fluid lines, when a Chevrolet sedan driven by James A. Manning, also traveling in a southerly direction, ran into the left rear portion of the truck.
The trial judge was of the opinion the truck was not disabled to the extent Whitney could not have gone on for some distance before stopping or driven off the road; that by halting the truck in a manner which obstructed a large part of his lane of travel he thereby created a hazard on the highway with regard to the dusty condition that obscured the vision of other motorists; and that, therefore, the driver was guilty of negligence which was a proximate cause of the accident.
Appellants Fortenberry and its insurer argue the sole proximate cause of the accident was the negligence of Manning, in failing to keep a proper lookout upon the road ahead, in not having his vehicle under control, and in driving at a rate of speed greater than visibility and road conditions justified.
All of the witnesses agreed the road generally was very dusty. Manning and his wife testified that when the collision took place the automobile was being driven at a speed of from 30 to 35 miles per hour; that they had been traveling at a faster rate, but upon caution of Mrs. Manning the speed had been reduced. C. E. Gibson, a motorist following the Manning car, testified he had been maintaining a speed of 55 miles per hour with visibility of about 150 yards. Mr. and Mrs. Manning, in justification of the rate of speed at which they were traveling, said that as they neared the scene of the accident a truck loaded with either pulpwood or billets passed and threw up a sudden, dense cloud of dust that considerably reduced visibility and prevented Manning from seeing the defendant's truck until he was within 20 feet of it.
Another pertinent factor raised by the evidence is whether the stopped truck left sufficient clearance for vehicles to pass. We believe it did. The testimony discloses that after the accident even with the Manning vehicle widening the obstructed portion of the highway, a number of vehicles passed. In fact, Manning's testimony indicates he could have passed the defendants' truck, except for oncoming traffic, and his proximity to the truck when he saw it. Further, we infer from Manning's testimony the pulpwood truck which raised the sudden dust complained of, passed Manning very close to the locus of impact. The witness, however, declined to estimate the intervening distance.
*716 In controversy also is the contention of Mrs. Manning that Whitney should have placed flares. We need only say the law does not make such a requirement in the daytime. Flags are prescribed in the daytime, but with ordinary visibility of 150 yards despite the dust, we are certain the precaution was unnecessary.
The Highway Regulatory Act, LSA-R.S. 32:241, provides: One shall not leave a vehicle parked on the highway unless it is impracticable to move it, and that if a vehicle is parked in the highway, it must leave an unobstructed width of not less than 15 feet upon the main traveled portion of the highway opposite such parked vehicle for passage of other vehicles; and a clear view of such vehicle must exist from a distance of at least 200 feet in each direction. The statute, Section 442, also requires motor trucks and combinations thereof to be equipped with two red flags, one to be placed 100 feet behind and the other 100 feet ahead of a parked vehicle, and in such position as to be visible to all approaching traffic during the daylight hours. Another provision, Section 227, prohibits the operation of a vehicle upon the highways at other than a reasonable and proper rate of speed under the circumstances, or at a speed endangering the persons or property of others.
The law does not endeavor to exact unreasonable requirements of a motorist and, therefore, does not exclude a driver from showing that his stopping on the roadway was unforseeable and in the nature of an emergency. He is only held responsible for failure to take reasonable safety measures such as are prescribed by the state traffic regulatory act. Whitney testified, and his testimony was not refuted, but corroborated by Manning, his wife, and Gibson, that his brakes locked and he was forced to stop.
We have concluded Manning was guilty of negligence in several particulars: He was traveling at a speed on a well traveled narrow highway, on a dusty road which permitted visibility of over 400 feet, except when passing, during which maneuver visibility was almost nil for a short time. Thus, in meeting a vehicle throwing up a dense cloud of dust, reasonable care requires that he foresee the condition about to be created and reduce his speed to permit an instant stop within the range of his vision. A speed of 30 miles per hour would not permit him to stop, if necessary, in less than 68 feet. He said he could see no farther than 20 feet, and thereby convicted himself of negligence which was a proximate cause of the accident. Hogue v. Akin Truck Line, La.App.1944, 16 So.2d 366; Mickens v. F. Strauss & Son, La. App.1946, 28 So.2d 84; Bernstein v. Cathey & Carrell Truck Lines, La.App.1947, 32 So. 2d 403; Rachal v. Balthazar, La.App.1947, 32 So.2d 483; McDowell v. National Sur. Corp., La.App.1953, 68 So.2d 189.
The proximate cause of an accident depends largely upon the circumstances of each case. In 4 Blashfield's Cyclopedia of Automobile Law & Practice, permanent edition, pp. 346, 347, par. 2533, the proximate cause is said to arise when the accident is the natural and probable consequence of the act of negligence, or, stated in a different way, the negligence and resulting injury must be known by common experience to be a natural and usual sequence, that is, according to the usual course of events, the accident forms the negligence. Therefore, in the application of this rule can it be said that the natural and probable consequence of the improper parking of the truck on the highway would be for a following car to run into it from the rear in the daytime and under circumstances as they then and there existed? Such a question is presented in Penton v. Sears, Roebuck & Company, La.App.1941, 4 So.2d 547, 549. Therein the court answered in the negative. The facts of the Penton case reflect the accident occurred on June 18th about 4:00 o'clock in the afternoon and the court found, in fact, there was no evidence the visibility was so poor as to *717 require any of the cars in the vicinity of the accident to have their lights burning. Although it had been raining hard previously it was only drizzling at the time of accident. The holding in the Penton case appropriately applies to the facts of the instant case. Arguendo, even if we found negligence on the part of Whitney, such negligence had become passive at the time of the accident. Thiaville v. Toups, La.App. 1946, 25 So.2d 361, 362. The court in this case said:
"The only explanation offered by Toups for the accident is that he was suddenly confronted with a blanket of fog and that he struck plaintiff's car while he was attempting to bring his automobile to a stop. This weak excuse can avail Toups naught for he owed a legal duty to the public to have his car under control and to refrain from operating it at a speed and in such manner as might cause injury to others."
Counsel for Mrs. Margie Manning has cited certain authorities as holding the truck driver, Charlie Whitney, was guilty of such negligence as constitutes a proximate cause of the accident. These are: Falgout v. Younger, La.App.1939, 192 So. 706; Hudson v. Provensano, La.App.1933, 149 So. 240; Jenkins v. A. R. Blossman, Inc., La.App.1952, 60 So.2d 131; Howell v. Kansas City Southern Transport Company, La.App.1953, 66 So.2d 646. An examination of these cases has convinced us that they are inapposite because the extent of obscurity to vision is indicated to have been prolonged and much greater in the cases cited than experienced in the instant case. Hudson v. Provensano presented a situation where the parked vehicle, a stranded automobile, was left on the highway with insufficient clearing space for passing cars, such space being less than 15 feet clearance, provided by the statute. The accident occurred before daylight when the atmosphere was damp and foggy. A further charge was made that the parked vehicle was without lights but neither the district nor appellate court saw fit to pass upon this question. In Falgout v. Younger a collision occurred between plaintiff's truck and an oncoming truck which attempted to pass a truck parked on the highway. The driver of the parked truck was held negligent in blocking the traffic lane on an extremely foggy morning. The truck was covered with a tarpaulin which covered it and further hindered its identity. In Jenkins v. A. R. Blossman, Inc., the truck driver who was experiencing difficulty with his truck motor on a rainy night, stopped the truck in the right traffic lane of the highway instead of pulling off onto the shoulder where he had ample room to park and turned off the truck lights while he was cranking the motor. He remained in that position without lights and without putting out flares for about five minutes. The truck driver was found to be negligent when a motorist approaching from the rear ran into his vehicle.
In the instant case we opine that as Manning approached the parked truck belonging to the Fortenberry Drilling Company, Inc., from a distance on a straight and level road at about noon on a clear day he should have observed the parked vehicle before he encountered the suddenly created dust cloud created by a passing vehicle. The atmospheric conditions prevailing in the instant case did not create a continuing obscurity and Manning should have foreseen the passing truck would create a cloud of dust and affect his visibility. He testified he did not see the parked truck until he was within 20 feet of it. This is equivalent to an admission that he did not see that which he should have seen.
A plea of contributory negligence which charges Mrs. Manning failed to warn her husband of the danger and was negligent was filed on behalf of the original defendants, who quote 61 C.J.S. Motor Vehicles § 487:
"An occupant of a motor vehicle, however, may not abandon the exercise of his own faculties and intrust *718 his safety absolutely to the driver, regardless of the imminence of danger, or the visible lack of ordinary care on the part of the driver to avoid harm, and if the occupant knows, or by the exercise of reasonable care should know, that he can no longer rely on the driver to exercise reasonable care and caution he himself should take affirmative action and exercise care proportionate to the known or obvious danger. If he fails to use such care, including the exercise of his own senses of sight, hearing, and perception to protect himself under such circumstances, he is guilty of contributory negligence."
This quotation was approved in White v. State Farm Mutual Auto Insurance Company, 1953, 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338. We do not agree that the doctrine as above stated has application in the instant case. Although the testimony of Mrs. Manning is contradictory to a certain extent on the question of the warning given her husband, nevertheless, she and her husband testified she cautioned him to slow down, and we are disposed to accept the testimony so given upon the trial.
The decree rejected Mrs. Manning's demand against her husband's insurer. Undoubtedly, this ruling was prompted by a finding of negligence on the part of Manning, which constituted a bar to his right to recover. This being true, it is difficult to understand why Manning's insurer was not held to be responsive in damages to Mrs. Manning. It is our finding James A. Manning alone was guilty of negligence and, accordingly, St. Paul Mercury Indemnity Company must be held liable in damages to Mrs. Manning.
The remaining question is one of quantum. Our examination of the evidence pertaining to the injuries of Mrs. Manning has convinced us the award was excessive and should be reduced.
Following the collision Mrs. Manning was hospitalized at the Baptist Hospital in Alexandria, Louisiana, on the date of the accident, July 7, 1955, where she remained for a period of seven days under treatment of Dr. M. B. Pearce. The doctor testified her injuries were entirely confined to the soft tissues, there being no bony pathology. The examination disclosed bruises and contusions to both knees, both elbows, both things and a rather large contused area on the right buttocks. Below the left knee he found a large contusion with a hematoma which covered the medial aspect below the left knee joint. No lacerations were found which required suturing. Dr. Pearce was of the opinion that Mrs. Manning would be partially disabled for a period of about three weeks, after which she could resume her normal duties as a housewife. On January 12, 1956, Mrs. Manning came into the hospital and remained there for a period of three days, during which time she underwent surgery for the removal of a cyst which had formed below the left knee. Upon release from the hospital Dr. Pearce testified that she should not engage in her household duties for another seven days. Mrs. Manning returned to the hospital on January 23rd for the removal of sutures. The doctor found the wound well healed. About six months later, on June 17, 1956, Mrs. Manning returned to the hospital where she remained for four days. Dr. Pearce by operative procedure removed a small lump from the leg of Mrs. Manning which the doctor described as a lipoma, described as a fattylike substance. He prescribed rest for about a week after her departure from the hospital. A further examination by Dr. Pearce was given on August 8, 1956, at which time Mrs. Manning complained of some weakness and a burning sensation below the knee. Dr. Pearce was of the opinion the cause of her trouble was due to bursitis and neuritis connected with the accident. The doctor testified he found no permanent injuries.
*719 In Boudreaux v. Cagle Motors, La.App. 1954, 70 So.2d 741, an award of $1,200 to a housewife who sustained a large hematoma and bruised muscle in her left leg, and bruises on the left elbow, whose principal treatment in addition to penicillin shots to prevent infection from large hematoma, consisted of diathermy and bed rest, who remained in bed from four to six weeks, who complained of headaches and who purportedly had traumatic bursitis, was held to be adequate to cover her injuries and resultant pain and suffering. This court, in the case of Costanza v. Great American Indemnity Company of New York, La.App. 1956, 88 So.2d 393, granted an award of $2,500 for contusions, lacerations and abrasions on both knees, a rather severe blow on the side of the face and whiplash injury to neck muscles and legaments. Our brothers on the First Circuit Court of Appeal reduced to $2,500 a larger award granted by the trial court to a woman who sustained multiple contusions and whose arthritic condition was traumatically aggravated, but who incurred no fracture or dislocation of any kind.
In Green v. Southern Furniture Company, Inc., La.App.1957, 94 So.2d 525, the plaintiff, Mrs. Green, was allowed $2,500 for pain and suffering caused by superficial lacerations of the left forearm, left arm, the right forearm, and multiple contusions and abrasions of head, left shoulder, hip and thigh, knees and right ankle, and for aggravation of pre-existing arthritic and neurotic conditions. Mrs. Manning's condition does not reflect that she sustained any permanent injuries. As the hematoma began to disappear, the cyst was formed, which required an operation for removal. There is nothing to indicate that this was anything more than minor surgery. The subsequent removal of a fatty lump manifestly was not serious. Dr. Pearce was not convinced that the occurrence of this small lump had any connection with the trauma. It is our opinion that an award of $2,500 would do substantial justice and is in harmony with the jurisprudence hereinabove referred to.
For the foregoing reasons the judgment from which appealed, in favor of Mrs. James A. Manning, and against Fortenberry Drilling Company, Inc. and Employers Mutual Liability Insurance Company of Wisconsin, will be annulled, reversed and set aside, and the demands against these defendants are dismissed at plaintiff's cost. The judgment insofar as it rejects plaintiff's demands against the St. Paul Mercury Indemnity Company is annulled, reversed and set aside and judgment is now entered in favor of Mrs. Margie Manning against St. Paul Mercury Indemnity Company for the sum of $2,500, costs to be assessed against St. Paul Mercury Indemnity Company, including costs of this appeal.