134 So.2d 93 (1961)
Johnny LEWIS, Plaintiff-Appellee,
v.
Harold L. QUEBEDEAUX et al., Defendant-Appellants.
No. 268.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1961.
On Rehearing September 20, 1961.
Rehearing Denied October 11, 1961.
Certiorari Denied November 6, 1961.
*94 Gold, Hall & Skye, by Jimmy M. Stoker and Leo Gold, Alexandria, for defendant-appellant.
Gist, Murchison & Gist, by Howard B. Gist, Jr., Alexandria, for defendants-appellants.
Harold J. Brouillette and James A. McGraw, by Harold J. Brouillette, Marksville, for plaintiff-appellee.
Nesib Nader, Shreveport, for intervenor-appellee.
Chester J. Coco, Marksville, for plaintiff-appellee.
Before TATE, FRUGÉ, and SAVOY, JJ.
*95 FRUGÉ, Judge.
This suit arose as a result of a rear end collision. From an adverse judgment defendants prosecute this appeal. Defendants are Harold Quebedeaux, who was driving his father's 1958 Chevrolet automobile, General Accident Fire & Life Assurance Corporation, the insurer of defendant's father's automobile, and Traders & General Insurance Company, the insurer of Harold L. Quebedeaux' automobile. Traders & General Insurance Company provides excess coverage over and above the amount for which Quebedeaux might be found liable exceeding the limits of the primary coverage provided by General Accident Fire & Life Assurance Corporation. Confederate Memorial Medical Center has intervened as subrogee per the provisions of LSA-R.S. 46:8 and 15, for medical services extended to plaintiff and attorney's fees.
The facts are substantially these. In the early morning of October 19, 1958, at about 3:00 A.M. the collision occurred. Plaintiff had been travelling south on Louisiana Highway 1 when approximately two miles south of Marksville, Louisiana, plaintiff's vehicle stalled and stopped. Plaintiff's automobile was a dark blue 1956 two-door Ford (owned by plaintiff) which was being driven by his brother Ameale (Emile) Lewis. When the car stopped plaintiff and two passengers got out in order to push the car onto the shoulder. As they were in the process of pushing the automobile onto the shoulder defendant approached in his father's car, driving about 55 to 60 miles per hour. He was also proceeding in a southerly direction. As he neared the plaintiff automobile he, allegedly, ran through a sheet of fog and was also blinded by the bright lights of an approaching car. The approaching car turned off and at that moment defendant saw plaintiff's automobile. Defendant applied his brakes and veered onto the left side of the highway in an attempt to avoid colliding with the plaintiff's automobile. He was unsuccessful in this attempt as when he pulled to the left his front left wheel ran off the road, hit some ruts, and swerved back onto the road hitting the rear left of the plaintiff automobile. Plaintiff, Johnny Lewis, was one of the three men attempting to push the Ford automobile off the road. The other two men successfully escaped injuryhowever, plaintiff was struck and both legs were broken. This suit resulted for damages to the plaintiff's automobile and for the injuries sustained by plaintiff.
Plaintiff contends that defendant was negligent which was the proximate cause of the accident and resultant damages and injuries and alternatively if plaintiff was contributorily negligent then the doctrine of last clear chance applies and defendant is nevertheless liable. Defendant denies negligence and contends that plaintiff was negligent and that his negligence bars recovery, and alternatively pleads contributory negligence. The lower court found that defendant was negligent in several respects, i. e. entering a "sheet of fog without reducing his speed; in not seeing the stalled car and those shoving it before he did; in driving his left wheel onto the shoulder of the road and losing control thereof; and in not being able to stop in time to avoid the collision." The lower court further found that plaintiff was not contributorily negligent either directly or by imputation. On appeal defendant reasserted the position that he was not negligent and alternatively that plaintiff was grossly contributorily negligent which was the proximate cause of the accident. Defendant contends that plaintiff was contributorily negligent in the following respects: parking an unlighted automobile on the highway at night in violation of law; failing to set out warnings of the unlighted automobile; failing to keep a proper lookout and take adequate measures for his own protection; failing to observe defendant's approach; and failing to warn defendant of the dangerous and hazardous condition created by stopping the automobile on the *96 highway without flares or signals or warning of any kind.
First for our consideration is the negligence of the defendant. In Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So. 2d 148, 150, the general rules of the duty of care required was stated thusly:
"`A motorist must use such diligence and care as is commensurate with the dangerous character of the locality. But, even though the danger be slight, he is not absolved from the duty to look ahead. * * *
"`The greater the danger the greater the degree of care required is a universal rule in the law of negligence * * * (citations omitted.)
"`A motorist has not the right to assume that his course of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead. If he does so assume and continues to travel as though he knew there was perfect clearance ahead, he does so at his own risk and peril.' * * * (Citations omitted.)"
It has been held that no hard and fast rule can be laid down, but surrounding circumstances and facts of a given case must be considered where the driver failed to slow down or observe a stationary vehicle obstructing the highway. See Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377. In the case of Rea v. Dow Motor Co., La.App., 36 So.2d 750, it was held that generally a motorist must see or will be held to have seen all objects sufficiently large to interfere with traffic on his side of the highway within the distance well illumined by the lights of his automobile and he will be excused for not having seen such objects unless the failure be due to lack of care and vigilance in the determination of which all physical, atmospheric and other pertinent conditions should be given proper weight and consideration. In the case of Sedotal v. Fidelity & Casualty Co. of New York, La.App., 77 So.2d 153, 156, Judge Lottinger reviewed the law as follows:
"* * * the general rule is well established in this state to the effect that it is the duty of the operator of an automobile, while driving at night, to operate said automobile in such a manner that it can be stopped within the range of vision illuminated by the headlights of the car. It is also well settled that there may be exceptional circumstances which will serve to exculpate a driver who, because of those exceptional circumstances and in spite of due diligence, fails to discover some obstruction or some other vehicle on the road ahead of him, and that no fixed rule may be laid down by which it may be determined just what will constitute such exceptional circumstances. * * * (Citations omitted)."
And in the case of King v. Riscon & W. E. Holoman Lumber Co., La.App., 76 So.2d 548, 551, Judge Gladney, with appropriate citation of authority, quoted as follows:
"`In each of the cases wherein the driver of the moving vehicle, which ran into a stationary one, was absolved from negligence as to contributing cause of the collision, the conditions that superinduced the accident were unusual, exceptional. They were not to any extent the result of the moving motorist's failure to reasonably perform every duty imposed by law.'
"The unusual conditions and exceptional circumstances referred to which go to form exceptions to the general rule above stated are such that even with the exercise of ordinary prudence and care by the motorist an accident would more than likely occur. * *." (Emphasis added.)
The mere fact that an obstruction in the road is unlawful will not excuse the motorist from exercising the required degree of care to observe and avoid running into *97 it. Culpepper v. Leonard Truck Lines, supra.
Defendant alleges that the fog and bright lights prevented him from seeing plaintiff's vehicle which had been stopped in the road. This, however, does not absolve defendant from the duty of care required under the circumstances. See Raziano v. Trauth, 15 La.App. 650, 131 So. 212, 213, wherein it was said: "But, assuming that the light and fog did affect his view, he would be required to exercise a degree of caution commensurate with the increased danger these circumstances involved." There the court further stated that "Assuming that the plaintiff had no lights at all, he can fail to recover only if defendant, in the absence of those lights, could (not) have avoided the collision by the exercise of proper care." And where there is fog on the highway, the duty of the driver of an automobile is increased so that he must exercise greater care. Howell v. Kansas City Southern Transport Co., La.App., 66 So.2d 646. Cf. Washington Fire & Marine Insurance Co. v. Hamilton, La.App., 106 So.2d 829. A driver of a motor vehicle at night, on encountering new and varying agencies such as bright lights, fog, dust, rain or smoke, must reduce the speed of the vehicle so that he will be able to stop it within the distance that the highway is illuminated by the lights of his vehicle. See Rector v. Allied Van Lines, La.App., 198 So. 516. In the case at bar defendant admits that he saw the fog but did not apply his brakes as he went through it. He also testified that immediately after going through the fog he encountered the bright lights of the car which turned off the road approximately three to four hundred feet prior to the scene of the accident. We find that defendant should have applied his brakes upon encountering the fog and further that he should have also applied his brakes upon being blinded by the bright lights of the approaching automobile. Had he slowed down when he should have seen the fog, he would have brought his vehicle from a speed of 55-60 miles an hour to that which would have been commensurate with the circumstances, and, in such case, been able to stop his car without having to run off onto the shoulder or hitting the plaintiff car.
Had defendant been properly observing the road before him he could have, and therefore he should have seen the fog. For his failure to do so and to properly apply his brakes, which is required under our jurisprudence, this collision would not have resulted. For his failure to see what he could have seen and to do what he could have done he is negligent.
Defendant contends that plaintiff was negligent in leaving his automobile in the road, unlighted, and for an unreasonable length of time before attempting to remove it from the highway and onto the shoulder of the road. As to the negligence of plaintiff in having his automobile in the road the record discloses that the automobile had stalled and stopped and the lights were out. The testimony is generally to the effect that without an unreasonable delay the plaintiff and two other occupants of the automobile got out in order to push it onto the shoulder of the road. We do not believe that plaintiff delayed an unreasonable length of time before attempting to remove the automobile from the road. The evidence discloses that as soon as it was ascertained that the automobile could not be started then the plaintiff and two occupants attempted to push it off the road. It was impossible for the taillights to be illuminated due to the fact that the battery was dead or the electrical system was not functioning properly. The only element with which plaintiff could be charged with negligence would be in a failure to have sent one of the occupants to warn traffic approaching from the rear of the presence of the plaintiff's stalled automobile. However, it was 3:00 A.M., a time when there is very little traffic on this highway. In view of the relatively short time which elapsed before the plaintiff and the occupants *98 attempted to remove the car from the road we do not find that it was unreasonable and/or negligence proximately causing the accident, in not having sent one of the other occupants down the road to warn oncoming traffic. Therefore we do not find the plaintiff contributorily negligent so as to bar recovery. We find that plaintiff did everything feasible and reasonable under the circumstances in order to remove his vehicle from the highway.
Defendant also contends that plaintiff was negligent in being physically in the road. We can find no merit in this contention because it was his duty to remove the vehicle from the highway. In order to remove it from the highway he had to be in the road to push it onto the shoulder. It would be unreasonable to hold that plaintiff had the duty to remove his vehicle from the road but at the same time to hold that he was contributorily negligent when injured in the process of removing the vehicle from the road by the mere fact that he was in the road attempting to accomplish the purpose originally set out to be done and which he was required by statute to do without unreasonable delay.
Although an automobile should not be unnecessarily stopped on the travelled portion of the highway, such stopping must be the proximate cause of the accident to constitute contributory negligence. See August v. Delta Fire & Casualty Co., La.App., 79 So.2d 144. The case of Jenkins v. A. R. Blossman, Inc., La.App., 60 So.2d 131, is readily distinguishable. There the driver did not have difficulty with the truck's electrical system,he had difficulty with its motor whereas his electrical system was in proper functioning order. Nevertheless, on a rainy night he stopped his truck in the right lane of the highway instead of pulling off onto the shoulder which was sufficiently wide and turned off his lights while he was cranking the motor and remained on the highway for five minutes without putting out flares. There he was held to have been guilty, as to the motorist who struck the rear of the truck, of gross negligence, which was the proximate cause of the accident. In the case at bar plaintiff had no electrical system with which to light the taillights in his automobile. We do not find that he acted unreasonably in stopping his car without attempting to drive off onto the shoulder while the lights were out. It has also been held that where stopping was necessitated by an unforeseeable cause you are required only to take the reasonable safety precautions under the circumstances. See Manning v. Fortenberry Drilling Co., La.App., 107 So.2d 713. Under the circumstances in the case at bar we do not find that the plaintiff acted unreasonably, or failed to take reasonable safety precautions required. The case of Fontenot v. Lafleur, La.App., 124 So.2d 607, 608, is distinguishable upon its facts. However the rules stated therein may be readily adapted for our purposes to the case at bar. In that case the plaintiff had been pushing the car for approximately 300 feet down the highway when he was struck from the rear by defendant. In the case at bar plaintiff was merely attempting to push his automobile off the highway at that point, i. e., he had not attempted to push it down the highway to a place where it could be repaired. Furthermore the defendant in the Fontenot case had slowed down prior to approaching the rear of the plaintiff's automobile as he had been blinded by lights just prior thereto and as the continued onset of the bright lights blinded him he applied his brakes, but, simultaneously with the application of the brakes, he hit the rear of plaintiff's vehicle. It was held that plaintiff had failed to remove his vehicle from the highway as soon as possible and had failed to protect traffic approaching from the rear by adequate lights and signals and that that was the proximate cause of the accident. However, in the case at bar we have found that the plaintiff did not take an unreasonable length of time before attempting to remove his car from the highway and that he was unable to set out *99 adequate signal lights. Furthermore in the Fontenot case the last clear chance doctrine was not applied, Judge Tate stating that:
"* * * a night motorist is not negligent for a failure to proceed and a consequent failure to avoid colliding with an obscured vehicle obstructing his path on the traveled portion of the highway, if such motorist could not reasonably have anticipated that his traffic lane was obstructed and if he could not by the exercise of reasonable prudence have observed the obstructing vehicle in time to have avoided colliding with it, * * *. (Citations omitted.)"
In the Fontenot case the taillight was hidden by one of the parties pushing the car, whereas, here the electrical system was not functioning. The plaintiff's vehicle could have been discovered had plaintiff seen what he could have seen and done what he should have done and consequently the vehicle in the case at bar was not an obscured vehicle obstructing defendant's path. Furthermore defendant could have reasonably anticipated that his traffic lane would be obstructed and could have by the exercise of reasonable prudence avoided the collision, especially in view of the requirement that when encountering fog or inclement weather and bright, blinding lights, one is required, and has a heavy burden and duty to slow his vehicle to a speed which is commensurate with surrounding circumstances. See cases cited supra, Howell case, Washington Fire & Marine Insurance Co. v. Hamilton and Raziano v. Trauthe, supra. Therefore we find that defendant's failure to see what he could have seen, (the fog) and his failure to take action commensurate with the circumstances, constituted the sole proximate cause of the collision and resultant injuries and damages, and for that reason he is liable therefor.
Both plaintiff and the intervenor have filed answers to the appeal. Defendant has filed motions to dismiss the answers to the appeal, alleging that they were not filed within the time required by statute. Intervenor has asked that the lower court's judgment awarding it $769 for the medical expenses plus $130.35 for the attorney's fees in accordance with LSA-R.S. 46:8 and 15 be affirmed. Since the intervenor is not asking for an increase in the amount awarded it by the lower court the question of whether or not its answer to the appeal was timely filed need not be considered. As to the answer to the appeal asking for an increase in the award made to the plaintiff we do not find it necessary to consider same, as we find that the judgment below in that respect is neither inadequate nor excessive. For these reasons we need not consider, and therefore pretermit the question of whether or not the answers to the appeal were timely filed.
The lower court awarded $3,500 for pain and suffering; $3,500 for past and future earnings; $800 property damage to the automobile; $769 medical; and $130.35 attorney's fees to the intervenor. The amounts were assessed against the defendant insurers and Quebedeaux as follows: Judgment in favor of intervenor and against Harold Quebedeaux and General Fire & Life Assurance Corporation in solido in the sum of $769; judgment in favor of plaintiff and aganist Harold Quebedeaux and General Fire & Life Assurance Corporation in solido in the sum of $5,031 plus legal interest thereon from date of demand until paid; judgment in favor of plaintiff and against Harold Quebedeaux and Traders & General Insurance Company in solido in the sum of $2,769 plus legal interest thereon, etc.; judgment taxing defendants General and Traders with all costs of this suit including the fees of the intervenor's attorney in the amount of $130.35, said cost to be shared by said companies in proportion to the amounts for which they have been cast herein.
*100 The insurance coverage provided by Traders & General Insurance Company (policy limits of $5,000 personal injuries; and $5,000 property damages) is excess coverage above the policy limits of the primary coverage provided by General Accident Fire & Life Assurance Corporation (which was stipulated to be $5,000 for personal injuries and damages; and $5,000 property damages). We have found no error in the amount of the awards. However, we find that the award should be assessed as follows: The total award for damages resulting from the physical injuries was in the amount of $7,769 (inclusive of medical injuries, see LSA-R.S. 46:8), and for property damages $800. General Accident Fire & Life Assurance Corporation and Harold Quebedeaux are solidarily liable for damages resulting from the personal injuriesthe liability of General Accident Fire & Life Assurance Corporation being limited to the terms of its policy in the amount of $5,000, plus legal interest thereon from date of judicial demand; Traders & General Insurance Company and Harold Quebedeaux are solidarily liable for the excess, above the policy limits of General Accident Fire & Life Assurance Corporation, for damages resulting from the personal injuries, plus legal interest thereon from the date of judicial demand until paid. Intervenor, Confederate Memorial Medical Center, is subrogated to this award by preference, for the medical and hospital bills in the amount of $769.
General Accident Fire & Life Assurance Corporation and Harold Quebedeaux are solidarily liable for the property damage, but not to exceed the limits of coverage provided in General Accident Fire & Life Assurance Corporation's policy, plus legal interest from date of judicial demand; Traders & General Insurance Company and Harold Quebedeaux are liable for property damages in excess (if any) of the coverage provided therefor by General Accident Fire & Life Assurance Corporation, plus legal interest thereon from date of judicial demand until paid. The attorney's fees provided in LSA-R.S. 46:15 are taxed as costs.
For the foregoing reasons the judgment appealed from is amended and as amended affirmed. Costs to be paid by defendants-appellants.
Amended and affirmed.

On Rehearing
En Banc.
HOOD, Judge.
We granted the application of defendants-appellants for a rehearing in order that we might review and reconsider all of the issues presented in this case.
Defendants contend that we erred in holding that Quebedeaux was negligent in failing to reduce the speed of his car as he approached and entered a cloud of fog immediately prior to the time the accident occurred, and in failing to reduce his speed when he was blinded by the lights of an approaching vehicle. It is argued that Quebedeaux encountered the fog suddenly, that it was only a "thin sheet of fog," which impaired his vision only momentarily, and that accordingly there was no opportunity or reason for him to apply his brakes. Defendants further contend that Quebedeaux was not blinded by the lights of the approaching car, but that his failure to see the stalled vehicle in front of him was due to the fact that he had dimmed his lights as required by law, thus shortening his range of vision, but that this also was not a circumstance requiring him to decrease his speed.
Quebedeaux admits that he saw a slight sheet of fog a "short distance" before he entered it, and that he did not reduce his speed. We also understand his testimony to be that he did not see the lights of the oncoming vehicle until after he had gone through this fog, that he then dimmed his lights, and that he did not see plaintiff's *101 stalled vehicle until after the approaching car turned off the highway 300 or 400 feet before it would have reached the point where the collision occurred. According to this defendant's own testimony, therefore, it appears to us that the fog and the headlights of the approaching car impaired his vision to the extent that he could not see the stalled vehicle until he reached a point within 75 feet of it, and in spite of that fact he did not reduce the speed of the vehicle he was driving.
The law is settled to the effect that a motorist is held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision. Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So.2d 148; Geoghean v. Greyhound Corp., 226 La. 405, 76 So.2d 412; McCandless v. Southern Bell Tel. & Tel. Co., 239 La. 983, 120 So.2d 501; McGee v. Southern Farm Bureau Casualty Co., La. App. 3 Cir., 125 So.2d 787.
The general rule which has been established by the jurisprudence of this State is that when visibility is materially impaired because of such things as bright lights, smoke, mist, dust, fog or rain, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision. As an extreme measure of safety it is his duty, when visibility ahead is not possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. See cases cited in our original opinion; also, Demerest v. Travelers Insurance Company, 234 La. 1048, 102 So.2d 451; Washington Fire & Marine Ins. Co. v. Hamilton, La.App.Orl., 106 So.2d 829; Ardoin v. Southern Farm Bureau Casualty Ins. Co., La.App. 3 Cir., 133 So.2d 129, and cases cited therein.
The general rule hereinabove stated, however, is not inflexible. Exceptions to that rule have been made in a number of cases where, because of the unusual and extraordinary circumstances which were found to exist in those particular cases, the driver of the moving vehicle was held to be free from actionable negligence in colliding with a stationary object on the road ahead of him. Some of the cases in which the general rule was not applied because of unusual circumstances are: Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1; Gaienne v. Cooperative Produce Co., 196 La. 417, 199 So. 377; Dodge v. Bituminous Casualty Corp., 214 La. 1031, 39 So. 2d 720; Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909; Rea v. Dow Motor Co., La.App. 2 Cir., 36 So.2d 750; Jenkins v. A. R. Blossman, La.App. 1 Cir., 60 So.2d 131; LeBlanc v. Southern Farm Bureau Casualty Co., La.App. 1 Cir., 104 So.2d 279; Byrd v. Elliott, La.App. 2 Cir., 108 So.2d 248; Puissegur v. Louque, La.App. 1 Cir., 113 So.2d 795; and Robards v. American Automobile Insurance Co., La. App. 1 Cir., 128 So.2d 44, 45.
In the instant suit appellants contend that the encountering of a light layer of fog and the headlights of an approaching automobile just before the collision occurred, together with the fact that plaintiff's unlighted automobile and its occupants were dark in color, were unusual or extraordinary circumstances of such a nature that the general rule should not be applied. We cannot agree with that argument. Quebedeaux was under a duty to maintain such control over his car that he could stop within the range of his vision. It was his duty *102 to reduce his speed prior to and upon encountering the fog bank and at the time his vision was impaired by the headlights of the approaching car, and he was negligent in failing to do so. We think his negligence in that respect must be construed as a proximate cause of the accident, unless, considering all the facts and circumstances, the obstruction in the highway was of such an unusual and extraordinary character that the accident likely would have occurred even if he had performed his duty and decreased his speed upon encountering the vision impairing agencies. It appears to us that if Quebedeaux had reduced his speed when his vision became impaired or when it became apparent that it would be impaired, the accident would have been avoided, even though plaintiff's car and its occupants were dark in color. He was negligent, therefore, in failing to reduce his speed when he encountered the fog bank and when his vision became impaired by approaching lights, and his negligence in that respect constituted a proximate cause of the accident.
In our original opinion we also concluded that plaintiff did not delay an unreasonable length of time in attempting to remove his stalled automobile from the main travelled portion of the highway, and that he was not negligent in failing to warn Quebedeaux of the danger. Accordingly, we held that plaintiff was free from contributory negligence. After again reviewing the record we are convinced that we erred in arriving at that conclusion.
Plaintiff testified that his car had been stalled 15 or 20 minutes before the accident occurred and that "we tried to push it, see, to see would it start and we got * * * pushed it to the side of the road to see what the trouble was, see." Ameal Lewis, who was driving the car when it stalled, testified that the vehicle remained stalled on the highway four or five minutes before the accident occurred, and that he remained in the car while other occupants pushed it a distance of about three or four feet before it was struck. Bancs Compton, an occupant of the car, testified that the vehicle had been stalled about ten minutes, and that he and two others were trying to push it off the road when he saw the Quebedeaux car approaching. He testified that upon seeing this car approaching from the rear, he ran back about 16 feet to flag him down, but when it became apparent that Quebedeaux would not stop, Compton jumped to the shoulder of the road to avoid being struck.
Quebedeaux testified that the stalled automobile was straddling the center line of the highway at the time the accident occurred, and his statements to that effect were corroborated by the State Trooper who investigated the accident, and who testified that a few minutes after the collision occurred he found debris in the center of the highway, indicating that the point of impact was on or near the center line.
We think the evidence establishes that at the time the collision occurred plaintiff's car was in or near the center of the highway, that it was not partially on the shoulder of the road as contended by plaintiff, and that plaintiff and other occupants of the car were not attempting to push that vehicle off the highway as some of them now contend. The evidence further convinces us that plaintiff had ample time within which to move his stalled vehicle off the highway before the accident occurred, but that he made no attempt to do so. Instead, he and other occupants of his car were pushing it down the highway to get it started. In this connection we think it is significant to note that plaintiff in his petition alleges that the accident occurred "while petitioner and others were attempting to push his automobile to get it started."
Plaintiff concedes that he made no attempt to warn Quebedeaux of the danger. He explains that he was not aware of the fact that the defendant's car was approaching until his brother shouted a warning to him, but that it was then too late for him to get out of the way. It seems to us that if plaintiff had exercised reasonable care he *103 would have seen the lights of the Quebedeaux car some distance before it reached him, and he would have heard it as it approached, since a car makes some noise when being driven at a speed of 55 or 60 miles per hour. The other two persons who were assisting plaintiff in pushing his car observed the Quebedeaux vehicle as it approached and they became aware of the danger in time to get out of the way. One of those persons, who was 67 years of age, says he saw the car approaching from the rear in time to run back several feet and attempt to give a warning before getting off the road. If plaintiff had exercised the same degree of care he would have been able to give some warning to Quebedeaux which may have avoided the accident.
In Fontenot v. LeFleur, La.App. 3 Cir., 124 So.2d 607, 608, which involved facts similar to those presented here, we said:
"* * * The plaintiff's negligent failure to remove his disabled vehicle from the traveled lanes of the highway as soon as possible and especially to protect traffic approaching from his rear by adequate lights and signals was a proximate cause of this accident. Suire v. Winters, 233 La. 585, 97 So.2d 404; Dodge v. Bituminous Casualty Corp., 214 La. 1031, 39 So.2d 720; Puissegur v. Louque, La.App. 1 Cir., 113 So.2d 795; Gaines v. Hardware Mutual Casualty Co., La.App. 1 Cir., 86 So.2d 218."
A review of the evidence convinces us that plaintiff in this case was negligent in not attempting to remove his disabled vehicle from the travelled lanes of the highway as soon as it was reasonably possible for him to do so, and in failing to see the Quebedeaux car approaching and to warn the driver of the danger before the collision occurred. In our opinion, his negligence in those respects were proximate and contributing causes of the accident, barring him from recovery. See LSA-R.S. 32:241; Ardoin v. Southern Farm Bureau Casualty Ins. Co., supra, and cases therein cited.
For the reasons herein assigned, our original opinion is recalled and rescinded, the judgment of the district court is reversed and judgment is hereby rendered in favor of defendants, dismissing plaintiff's suit at his costs. All costs of this appeal are assessed to plaintiff-appellee.
Reversed.
FRUGÉ, J., dissents and adheres to the original opinion.
TATE, Judge (dissenting).
The writer must respectfully dissent from the conclusion of his brethren that the plaintiff was contributorily negligent.
The five occupants of the plaintiff's car all testified without contradiction, that, right after the motor stopped and with a minimum of discussion, three of them alighted and commenced at once to push the vehicle off the highway to the shoulder. I can find no evidence in the record which would show that the plaintiff had ample time before the accident occurred within which to move his stalled vehicle off the highway or to warn oncoming traffic.
The testimony indicates, to the contrary, that the three men had, immediately after the car stopped, pushed the automobile only about three feet when the lights of the defendant's oncoming car became visible, and that one of the men then was able to run back only sixteen feet in a vain attempt to flag the oncoming car, while the other two men continued in a desperate attempt to push the vehicle off the road out of the way of the oncoming vehicle.
This indicates, surely, as the trial court held, that only seconds instead of any substantial time elapsed between the time that the plaintiff's car stalled and the time that the defendant's car negligently crashed into it. And, surely, the majority does not mean to hold that the plaintiff is contributorily negligent because he continued to try to push the stalled automobile off the highway *104 and out of the path of the oncoming vehicle, in the few moments after its lights first appeared, rather than immediately saving his own skin and leaving the oncoming motorist to his fate?
It is true that some of the witnesses during their testimony made offhand estimates that the vehicle had been stalled a stated number of minutes. But the trial court, in my opinion, properly discounted these offhand estimates of illiterate witnesses, notoriously inaccurate and not intended to be precise as to the exact lapse of time; it properly evaluated such guesses in the context of the consistent story of each of these witnesses that, almost right away after the car stopped, the pushing operation commenced.
My most serious disagreement with the majority opinion on rehearing, however, is not with its differing factual appreciation as compared with that of the trial court and of the dissenting members of this court. My most serious disagreement arises from the complete lack of any weight accorded by the present majority to the factual appreciations of the trial judge, as well as the present majority's free substitution of its own judgment for that of the trial court in the absence of manifest error.
In borderline cases, judges may reasonably differ in their reconstruction, from the necessarily imprecise after-remembered verbal testimony of (often illiterate) witnesses, as to the reconstruction of what actually occurred in the sudden seconds of accident. In such instances, we deprive the trial court of any function and its judgment of any weight, if the appellate court freely substitutes its own judgment for that of the trial court in appeals in which the testimony of the trial witnesses can reasonably be interpreted as affording a factual basis for the correctness of the trial court's judgment.
To afford proper weight to trial court determinations and to restrict appellate courts to their proper function of reviewing, not re-trying, factual matters, the jurisprudence provides that there is a "presumption on appeal that district court judgments are correct and decided according to law, so that the burden is on the appellant is to show the contrary * * *", Dupuy v. Iowa Mut. Ins. Co., La.App. 1 Cir., 113 So.2d 830, 831-832. While the able argument of the appellants herein certainly affords a reasonable basis for the present majority's conclusions, I am unable to see that the appellants have met this burden of showing that the trial court opinion is manifestly erroneous, since the evidence may reasonably be construed, as the trial court did in its considered opinion on the merits.
I therefore respectfully dissent from the present majority opinion on rehearing, insofar as it reversed the trial court's determination that the plaintiff was not contributorily negligent.

On Application for Rehearing.
En Banc. Rehearing denied.